### COLPOYS v. GATES et al.
### Nos. 7710, 7711.

United States Court of Appeals for the District of Columbia.

Argued Dec. 10, 1940.

Decided Jan. 27, 1941.

Vivian O. Hill, Edward M. Curran, U. S. Atty., and John W. Fihelly, Asst. U. S. Atty., all of Washington, D. C., for appellant.

H. L. McCormick, Clair L. Stout, and F. Marion Rhodes, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

These are special appeals from refusals of the District Court to dismiss, on motion, certain complaints against appellant Colpoys. The motions were based on the contention that appellant's acts were done in connection with his duties as United States Marshal for the District of Columbia, and were therefore privileged.

The suits are for libel and slander. No. 7710 was brought against appellant and the Washington Post, No. 7711 against appellant and the Washington Daily News. The newspapers answered, and are not involved in these appeals. The complaints allege that until February 19, 1939, the plaintiffs (now the appellees) were Deputy United States Marshals. They allege that the newspapers published, falsely and in order to injure appellees, certain articles which are quoted and attached as exhibits. The articles state in substance that a fellow deputy accused appellees of accepting gratuities from counsel for the defense in a criminal case in which the jury were tampered with and bribery and corruption occurred; that appellant suspended appellees on that charge and demanded their resignations; and that they resigned.

The complaints attribute to appellant only small parts of these newspaper articles. In No. 7710 appellant is charged with publishing a statement that one Broderick was asked to resign "because of things that occurred before. He was not the type, temperamentally, that I wanted on the staff. I do want to say that as far as character is concerned Broderick is clean and unassailable. And I do not have any idea that Broderick was implicated in any way in the Warring jury fixing. * * * It would be unjust * * * to allow the good names of the honest and conscientious marshals to be brought into question by the misconduct of some." In No. 7711 appellant is charged with publishing: "I've given them chance after chance. I've taken them in here and tried to reform them. I'm the last one in the world to do any injustice to anyone." The complaints allege that these statements were made concerning appellees, were false, were known by appellant to be false, and were published for the purpose of injuring appellees. We do not consider whether the statements appear to be made concerning appellees, or to be defamatory, since those questions were not presented to the District Court. Appellant's motions to dismiss raise the single question whether the statements are privileged.

It has been held that a Cabinet officer is absolutely privileged to publish defamation, not only in doing his duty but also in discussing it; his defamation, to be protected, need only have "more or less connection with the general matters committed by law to his control or supervision."[1] Cabinet officers have political functions, and public interest is thought to require that they be not restrained by fear of libel suits from publicly explaining their acts and policies. We need not now decide whether the same rule applies to other officers "who determine policies to be pursued by the United States * * *."[2] United States Marshals have no such functions. It was appellant's duty to investigate charges, if any were made,[3] against his deputies. It may or may not have been his duty to dismiss his deputies. It was not his duty publicly to discuss their dismissal or publicly to explain the reasons for it. He had no duty to tell the public anything about them, unless possibly the bare fact that they were no longer on his staff. In the cases which have extended an absolute privilege to administrative officers without policy-determining functions, the thing held to be privileged has usually if not always been an act in the general line of duty, not a separate discussion or explanation. Thus it has been held that a Special Assistant to the Attorney General cannot be sued for an improper indictment and trial;[4] or a penitentiary warden for an improper imprisonment under color of law;[5] or a United States consul,[6] or a division chief in the War Department,[7] for libel in an official report; or a Special Agent of the Bureau of Investigation, or other officers, for making charges before a grand jury along the lines of their respective functions.[8] Whether or not any of these cases went too far, we think they went far enough. Improbable as the present complaints may be, they charge appellant with knowingly broadcasting false statements about his former deputies for the purpose of injuring them. We agree with the District Court that such conduct by such an officer is not privileged.

Affirmed.

---

[1] Spalding v. Vilas, 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780; Glass v. Ickes, Aug. 26, 1940, App.D.C., 117 F.2d 273, certiorari denied Jan. 6, 1941, 61 S.Ct. 441, 85 L.Ed. —.

[2] 53 Stat. 1148, § 9, U.S.C.A., Tit. 18, § 61h; permitting political activity by such officers, while it is forbidden to most officers.

[3] Technically, we should assume that none were made. The complaints show that the newspapers said that charges were made; but the complaints allege, without qualification, that the newspaper stories were false.

[4] Yaselli v. Goff, 2 Cir., 12 F.2d 396, 56 A.L.R. 1239, affirmed, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395.

[5] Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211.

[6] United States, to Use of Parravicino, v. Brunswick, 63 App.D.C. 65, 69 F.2d 383.

[7] DeArnaud v. Ainsworth, 24 App.D.C. 167, 5 L.R.A.,N.S., 163, appeal dismissed, 199 U.S. 616, 26 S.Ct. 743, 50 L.Ed. 335.

[8] Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, certiorari denied, 305 U.S. 642, 59 S.Ct. 146, 83 L.Ed. 414.