**Ernest J. SAUBER**

v.

**Howard B. GLIEDMAN.**

**No. 13002.**

United States Court of Appeals
Seventh Circuit.

Nov. 10, 1960.

Rehearing Denied Dec. 12, 1960.

Barnabas F. Sears, Lloyd J. Tyler, Jr., James N. Kosmond, Chicago, Ill., for plaintiff-appellant.

Robert Tieken, U. S. Atty., Chicago, Ill., Robert Kramer, Asst. Atty. Gen., George Cochran Doub, Asst. Atty. Gen., Morton Hollander, Herman Marcuse, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and GRUBB, District Judge.

GRUBB, District Judge.

This is an appeal from an order granting summary judgment for the defendant and dismissal of the cause in an action for malicious defamation.

Defendant-appellee, Howard B. Gliedman, was appointed a Special Assistant to the Attorney General of the United States for the purpose of the prosecution of plaintiff-appellant, Ernest J. Sauber, former District Director of Internal Revenue in Chicago, Illinois, who, together with four other individuals, had been indicted on charges of conspiracy to defraud the United States of income taxes due and to commit certain other offenses, which charges grew out of certain pending criminal tax evasion cases. Under his letter of authority which was filed with the district clerk on March 6, 1957, Gliedman was assigned:

"* * * to assist in the trial of the case or cases growing out of the transactions hereinafter mentioned in which the Government is interested; and in that connection you are specifically directed to file informations and to conduct in the Northern District of Illinois and in any other judicial district * * * any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates which district attorneys are authorized by law to conduct."

The transactions referred to in this letter related to possible further irregularities in the Chicago office of the Internal Revenue Service.

Gliedman took his oath of office on March 6, 1957. On the following day he held a press conference in which he explained the reasons for his appointment as well as its purpose and scope. The following statements allegedly made during this press conference constitute the claimed malicious defamation:

"To conduct work preparatory to the Sauber trial to seek 'possible further corruption.'

" 'When you have a man who was district director indicted for conspiracy to defraud the U. S. government of money, it doesn't take a genius to see something is wrong.'

" 'This is not a witch hunt, and it should be good for employee morale, because an awful cloud has been hanging over the Chicago office.'

" 'If nothing is there, we won't put it there.' "

The second claim of the complaint alleging that the defendant requested and procured two newspapers to publish false and defamatory matter concerning Sauber was dismissed by the district court and is not in issue here.

Gliedman filed a first motion for summary judgment on the ground of absolute privilege, which motion was supported by an affidavit of Warren Olney III, Assistant Attorney General of the United States, and which states in part as follows:

"Howard B. Gliedman is in charge of the prosecution of the case of United States v. Harold E. Sullivan, Byron A. Cain, Leon J. Busby, Ernest J. Sauber, and Ralph R. Johnson, as well as in charge of the investigation of alleged irregularities in the office of the Director of Internal Revenue, Chicago, Illinois.

"Howard B. Gliedman entered upon the above assignment on March 5, 1957, and he is performing this function in the capacity of Special Assistant to the Attorney General of the United States pursuant to authorization by the Attorney General of the United States.

"In his capacity as Special Assistant to the Attorney General of the United States, Howard B. Gliedman is authorized and expected to conduct relations with the press, and to make such public statements as are called for in connection with his assignment."

This motion was denied. Relying on the cases of Barr v. Matteo, 1957, 100 U.S.App.D.C. 319, 244 F.2d 767, and Colpoys v. Gates, 1941, 73 App.D.C. 193, 118 F.2d 16, Judge Hoffman concluded that statements to the press relating to explanations of official acts or policies were attended by absolute privilege only where made by cabinet members or officers of comparable rank, and that Gliedman's duties as prosecuting attorney did not require the application of the protection of the doctrine of absolute privilege in respect to his communications to the press.

After reversal of the appellate decision in the Barr case by the Supreme Court in Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, Gliedman renewed his motion for summary judgment based on the well pleaded allegations of fact of the complaint and on the Olney affidavit submitted for the purposes of the first motion for summary judgment.

Judge Robson, to whom the case had been reassigned, held that the Barr case controlled this action and granted the motion for summary judgment. It is this order which is being reviewed.

■ Upon consideration of the circumstances under which these statements were made as set forth in the complaint and its supporting affidavit, it is the conclusion of this court that Gliedman's statements to the press were absolutely privileged and that the absolute privilege attending the communications serves as a bar to any civil action for libel or slander based on said defamatory statements.

In the Barr case, the Supreme Court had before it a press release by an acting director of an executive agency, the Office of Rent Stabilization. The press release related to internal agency affairs which had received congressional notice which in turn had become the subject of press comment. The communication did not concern the official functions of the agency as such. In delineating the scope of absolute privilege attending the acts of federal governmental officials, the court set forth criteria by which the challenged acts must be judged in order to determine the applicability of the doctrine.

■ Under the rule of the Barr case, privilege is not an attribute of a particular title or rank of office. The test of privilege is the relation of the conduct complained of to matters committed to the official's control and supervision. A public statement may be privileged where the nature of the official's duties requires that he be immune from private tort liability in respect to it in furtherance of the effective functioning of government. Privilege, therefore, is directly dependent upon the scope of power and discretion incident to the duty entrusted to the officer by delegation and redelegation of authority from the highest to the lower levels of the governmental hierarchy.

In Barr, the Supreme Court further noted that the official was the acting head of an important agency clothed with powers of the executive by redelegation; that the subject matter of the press release had had wide publicity; and that the issuance of the release was standard agency practice. It held that the challenged action was within the "outer perimeter" of the official's duties and was thereby brought within the protection of privilege.

Measured by the criteria set forth in the Barr decision, Gliedman's statements to the press call for the application of the doctrine of absolute privilege. As Special Assistant to the Attorney General, Gliedman's powers were equivalent to those of a United States attorney. Title 5 U.S.C.A. § 310, Conduct of legal proceedings. In respect to his legal assignment of prosecutor and investigator of Sauber and the Department of Internal Revenue in Chicago, Gliedman was the direct representative of the Attorney General of the United States. As such representative by assignment, Gliedman held the responsibilities, duties, and discretion of the Attorney General of the

United States, limited in scope only to the proceedings assigned to him.

His superior officer certified that Gliedman was authorized and expected to conduct relations with the press and to make such public statements as were called for in connection with his assignment. The statement to the press complained of here related to the subject matter of Gliedman's assignment. Irregularities in the performance of their duties by important public officials are of great public concern, and the public has a right to be informed as to the steps taken by the proper governmental agency to investigate and correct abuses of authority.

■ Liability to respond in damages in an action based on defamatory statements to the press relating to matters within his power and discretion and of public interest and concern might seriously interfere with the performance of the duties of a Special Assistant to the Attorney General of the United States. Cf. Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434; Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579.

■ It is settled that the issue of privilege of federal officials in respect to activities in the course of their duties is governed by federal law. Howard v. Lyons, 360 U.S. 593, 597, 79 S.Ct. 1331, 3 L.Ed.2d 1454. The case of Jacobs v. Herlands, Sup., 1940, 17 N.Y.S.2d 711, relied on by appellant, is, therefore, inapplicable since it determined the question of privilege as applicable to the activities of a prosecuting attorney under New York law.

Any impropriety committed by a prosecuting attorney that interferes with an accused's constitutional right to a fair and impartial trial may be remedied in the criminal proceeding against the accused. Cf. United States v. Stromberg, 2 Cir., 1959, 268 F.2d 256, 269–270, certiorari denied 361 U.S. 863, 80 S.Ct. 123, 4 L.Ed.2d 102. Although the official may be immune to civil tort liability, he may nevertheless be subject to discipline and professional censure where warranted. Gregoire v. Biddle, supra, 177 F.2d at page 581; Barr v. Matteo, supra, 360 U.S. at page 576, 79 S.Ct. 1335, 3 L.Ed.2d 1434.

The "Memorandum to the Heads of All Departments and Agencies" issued by Attorney General William P. Rogers immediately after the publication of the Supreme Court's decision in Barr v. Matteo notes that the reference to sanctions in the Barr case "undoubtedly includes. disciplinary action or removal from office if official irresponsibility should be involved." These sanctions serve to inhibit unprofessional activities and undue injury to private individuals, although the individuals directly affected may have been denied their private remedy in the greater interest of the public in the effective functioning of the government.

For the foregoing reasons, the order of the district court must be and is hereby Affirmed.

### On Petition for Rehearing.

In order to correct certain erroneous statements of fact in the opinion in the above-entitled case which were pointed out by appellant in his brief on a petition for rehearing, the opinion is hereby amended by deleting therefrom the second last paragraph on page 2 beginning with the words, "The second claim of the complaint * * *," and by further deleting therefrom the words, "and its supporting affidavit," following the words, "the complaint," found in the last line on page 3.

The statements hereby corrected are not material to the decision. Other contentions on the petition for rehearing are without merit, and the petition is, therefore, hereby Denied.