**Sherman H. SKOLNICK, Plaintiff-Appellant,**

v.

**William J. CAMPBELL, B. Franklin Chiles and James Guadagno, Defendants-Appellees.**

**No. 16195.**

United States Court of Appeals
Seventh Circuit.

July 24, 1968.

Sherman H. Skolnick, Chicago, Ill., for plaintiff-appellant.

Thomas A. Foran, U. S. Atty., Jack B. Schmetterer, Asst. U. S. Atty., Chicago, Ill., for defendants-appellees; John Peter Lulinski, Asst. U. S. Atty., of counsel.

Before SCHNACKENBERG, KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Sherman H. Skolnick brought an action for damages against the Honorable William J. Campbell, Chief Judge of the district court for the northern district of Illinois, B. Franklin Chiles, Judge Campbell's court crier, and James Guadagno, a deputy marshal assigned to Judge Campbell as bailiff.

Count 1 of the complaint alleged that Skolnick is a plaintiff in an action in district court, Skolnick v. Mayor & City Council of Chicago, and that defendants conspired to deter him, by force, intimidation, and threat, from attending the court as such party and to injure him in his person and property on account of his having so attended.[1] Several acts in furtherance of the conspiracy were alleged.

Count 2 re-alleged the same facts, basing jurisdiction on their having taken place in the United States Court House, a federal enclave, and on the theory they were torts under the law of Illinois, which became federal law upon acceptance of cession.[2] The facts alleged can be separated into two claims of libel and one of assault and battery.

The central event, aside from the alleged libels, was an attempt by plaintiff Skolnick to appear before Judge Campbell on January 4, 1967 to argue a motion in Skolnick v. Mayor & City Council of Chicago. There appears to be agreement that Mr. Skolnick, a paraplegic invalid, was in the courtroom in his wheelchair while court was in session, that his motion was not called, that Judge Campbell left the bench, that plaintiff then attempted to gain the attention of the judge or the minute clerk, that Chiles took hold of Skolnick's wheelchair and propelled him toward or out of the courtroom door. There is conflict over whether Skolnick had been previously notified his motion would not be heard, over the orderliness of Skolnick's conduct, over the degree of force used by Chiles, and over the extent to which Guadagno participated in ejecting Mr. Skolnick from the courtroom.

The complaint in this action was filed January 6, a motion by Skolnick that all judges of the seventh circuit disqualify themselves and that a judge be brought in from elsewhere, January 17, and an answer and motion for summary judg-

---

1. 42 U.S.C. sec. 1985(2) provides for recovery of damages against members of a conspiracy so described.

2. See Mater v. Holley (5th Cir. 1952), 200 F.2d 123, supporting such analysis. Sarelas v. Anagnost (7th Cir. 1964), 332 F.2d 111, appears to be distinguishable.

ment January 24. On February 2 the motion for disqualification was denied by Judge Hoffman. On February 7, Judge Hoffman granted defendants' motion for summary judgment. On the same date Skolnick filed notice that he would move for a stay until disposition of an application forwarded to the Supreme Court of the United States the previous day seeking to compel the disqualification of Judge Hoffman. On February 14, Skolnick moved to vacate the order granting summary judgment and presented affidavits by himself and two others, in opposition to the motion for summary judgment. This motion was denied.

Plaintiff Skolnick appealed, and moved in this court that all judges disqualify themselves and that judges be brought in from elsewhere. The division of this court sitting in this case denied the motion, and each of the judges making up the division declined to disqualify himself.

The position of Judge Campbell, appearing from a memorandum on file and incorporated in the answer, is summarized as follows: The action, Skolnick v. Mayor & City Council of Chicago, had been assigned to a three judge court. Judge Campbell ordered Skolnick's motion to be presented on briefs to the three judge court. His clerk notified the parties by telephone that the motion would not be heard January 4. Skolnick said he was coming anyway. Judge Campbell had received warnings concerning plaintiff's antagonism to judges and the possibility that plaintiff might have an impulse to violence with firearms. Judge Campbell gave directions to Chiles and Guadagno "that one of them at all times * * * be immediately adjacent to his wheelchair and keep him under constant observation in order immediately to detect and prevent any possible untoward incident."

■ 42 U.S.C. sec. 1985(2) provides for recovery for conspiracy to deter any party in any court of the United States from attending such court, or to injure such party on account of his having so attended. In our opinion it would be absurd to apply this conspiracy provision to the decision of the judge of the federal court involved that a motion be submitted on briefs and not argued orally, and to the actions of court officers, under the direction of the judge, for the purpose of maintaining order and security in the courtroom. Principles of judicial and official immunity from civil liability to be mentioned later, would lead to the same result, but it seems more direct to say that the statute simply does not apply.

Hence there is no merit in Count 1, and we turn to Count 2, treating it as several claims in tort.

*The "press release" alleged libel.*

Skolnick's motion sought disqualification of Judge Campbell because of "disquieting" published reports that he was a director of a foundation which reportedly derives much of its income from a mortgage on a Las Vegas hotel and gambling casino. On January 2, 1967, Judge Campbell issued a press release asserting that he had originally been a member of the board, had attended the initial meeting, had resigned several months ago, and had no idea of its investments.

The portion alleged to be libelous referred to the individual who had filed the motion as an "uninformed pro-se litigant" and referred to his motion as "such trash." Skolnick alleges that he is learned in the law. He is not, however, a lawyer.

■■ The references complained of are not actionable libel under the law of Illinois without allegations of special damage.[3] On the theory that the press had informed the public of Skolnick's charge, and that the press release was an appropriate response for the protection of the reputation of the court, Judge Campbell may in any event have enjoyed

3. Whitby v. Associated Discount Corporation (1965), 59 Ill.App.2d 337, 267 N.E.2d 482, 485.

absolute immunity from civil liability under Barr v. Matteo.[4]

### The additional alleged libel.

■ Plaintiff Skolnick also alleged that Judge Campbell caused the publication in a Chicago newspaper of an additional statement that "Skolnick has a penchant for seeking the disqualification of judges during his cases. During the 1965 legal fight over the apportionment of Illinois General Assembly voting districts, Skolnick tried to have the entire Illinois Supreme Court disqualified from hearing his suit." The same comments apply here as to the press release. In addition, it is not alleged that any act in this connection was performed in the United States Court House.

### The alleged assault and battery. Plaintiff's version.

According to the affidavits of Skolnick and two other witnesses,[5] Skolnick did not say anything from the time court was called until Judge Campbell left the bench. Then in a very low voice he asked to be heard. He held up his papers and then put his hands on his wheel rims.

Chiles, who had been sitting behind Skolnick and telling him not to move, "stood up behind Skolnick's wheelchair and seized Skolnick by putting his arms over him and on him, and violently grabbing Skolnick's wheelchair first by the armrests and then by the rubber steering handles, and with great force and violence swinging the wheelchair in a U-turn, nearly tipping over the wheelchair * * * and with great force and violence pushed and shoved Skolnick in his wheelchair to the door."

### Defendants' version.

Judge Campbell stated: " * * * I have chosen to overlook his disruptive,

impolite, contemptuous and punishable conduct in the presence of the Court and a crowded courtroom on the morning of January 4th. The plaintiff at that time apparently felt that his frequent improper interruptions and shouts during and immediately following the motions call would require me to give him an opportunity for a speech."

Defendant Chiles stated in an affidavit that Judge Campbell instructed him and Guadagno to keep very close surveillance on Mr. Skolnick in the courtroom and prevent any disturbance or threatening act. "When a recess was announced and as Judge Campbell started to leave the bench, Mr. Skolnick started to propel his wheelchair forward toward the judge and stated in a loud voice, 'I want to be heard.' Affiant then grasped the back of the wheelchair and stopped its motion, then turned it around carefully and without any violent motion as alleged in the complaint, until Mr. Skolnick faced the rear of the courtroom. An associate of Mr. Skolnick then stepped forward and offered to push the wheelchair, and that associate propelled the wheelchair containing Mr. Skolnick out of the courtroom."

Defendant Guadagno's version was similar.

■ It is clear that the decision as to the matters to be heard on January 4 and the regulation of order and behavior in the courtroom were within the judicial function of Judge Campbell.

■■ Under the law of every jurisdiction judges have absolute immunity from civil liability for judicial acts within their jurisdiction.[6] Skolnick denies that Judge Campbell had any basis for his acts, challenges his good faith, and insists on a right to a jury trial. The immunity, however, makes such issues

---

4. (1959), 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434.

5. Although these were filed after the summary judgment was granted, and in support of a motion to vacate, we give them the same consideration as if timely filed in opposition to the motion for summary judgment.

6. Pierson v. Ray (1967), 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288; Bradley v. Fisher (1871), 13 Wall., U.S. 335, 20 L.Ed. 646; Prosser, Law of Torts, p. 1014.

immaterial and they are therefore not to be tried in a civil action for damages.

In many jurisdictions, minor officials are not immune, or are not immune if malice be established.[7] The federal official immunity, however, is absolute and extends to an officer of minor rank with respect to acts "within the outer perimeter" of that officer's line of duty.[8]

The court officers in this case had duties with respect to maintaining order and security in the courtoom, made more specific by the direction of Judge Campbell concerning Skolnick, and their decision that Skolnick's actions made it appropriate to push his wheelchair out of the courtroom and as to the amount of force to be applied in turning and pushing it were well within the limits of their duty. Mr. Skolnick denies any misconduct on his part, asserts that the force used was excessive, and seeks a jury trial of these issues. The official immunity from civil liability, however, obviates the trial of those issues in an action for damages. The public purpose of the immunity is to free the officers from apprehension lest a jury might misread their intent or differ with their judgment, and submitting these issues to a jury would frustrate the purpose.

As well put by Judge Learned Hand:

"The justification * * * is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."[9]

The judgment is affirmed.

7. Prosser, Law of Torts, p. 1016.

8. Barr v. Matteo, supra, 575; Howard v. Lyons (1959), 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454; Sauber v. Gliedman (7th Cir. 1960), 283 F.2d 941; Norton v. McShane (5th Cir. 1964), 332 F.2d 855; Scherer v. Brennan (7th Cir. 1967), 379 F.2d 609.

9. Gregoire v. Biddle (2d Cir. 1949), 177 F.2d 579, 581, quoted in Barr v. Matteo, supra, 571.