Mary P. FROST, Plaintiff,

v.

T. S. STERN and Chevis D. Clark,
Defendants.

Civ. A. No. 68-273.

United States District Court
D. South Carolina,
Charleston Division.

March 21, 1969.

John Graham Altman, Charleston, S. C., for plaintiff.

Klyde Robinson, U. S. Atty., by Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for defendants.

## ORDER

SIMONS, District Judge.

This matter is before the court on defendants' motion to dismiss or in the alternative for summary judgment. After hearing arguments and considering the record, including briefs of the parties, the court concludes that there is no dispute as to the material facts, and that defendants' motion should be granted.

Plaintiff, a civilian employee at the Naval Supply Center, Charleston, South Carolina, instituted this action in the Court of Common Pleas for Charleston County, South Carolina, against T. S.

Stern, a Captain in the United States Navy and Commander of the Naval Supply Center, and Chevis D. Clark, a civilian employed at the Naval Supply Center as a Staff Illustrator. Plaintiff seeks to recover $100,000 as actual and punitive damages arising from the malicious preparation and distribution by Stern and Clark of a cartoon which allegedly held plaintiff up to ridicule and was defamatory.

Defendants duly petitioned for removal of this cause to this court pursuant to the provisions of Title 28, Section 1442(a) (1), United States Code, alleging that defendant T. S. Stern is a Captain in the United States Navy and the defendant Chevis D. Clark is employed as a Staff Illustrator by the United States Navy; and that their actions at all times alleged in the complaint were done while they were acting under color of their offices and within the scope of authority of their offices. By order dated April 4, 1968 this case was removed from the Court of Common Pleas for Charleston County, South Carolina to this court.

The record establishes without question that subject cartoon was prepared by defendant Clark at the request of his superior on government time and with government materials. It was presented to a departing Naval Officer in the Officer's Club at the Naval Base, Charleston, South Carolina, by defendant Stern.

By their motion made pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure, the defendants contend that the preparation of the cartoon on government time and with government materials by a Navy civilian employee authorized to do so, and its subsequent distribution by a Naval officer in furtherance of Naval functions and in accordance with long-standing Naval custom is absolutely privileged and bars recovery in this action, regardless of whether plaintiff upon trial would be able to establish "actual malice."

From the affidavits filed in support of the motion, it is uncontradicted that defendant Clark prepared the cartoon by direction of his superior officer as a part of his job as Staff Illustrator, and that the later presentation of the cartoon to a departing officer was in compliance with a long-standing Navy custom and tradition. No affidavits to the contrary sufficient to raise a factual dispute or issue have been filed by plaintiffs.

In determining whether the defendants' actions were privileged, this court looks to a long line of decisions which have outlined the doctrine of immunity for official acts. The principal case relied upon by defendants is Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). In that case, plaintiffs sued the Acting Director of the Office of Rent Stabilization for damages, alleging that defendant maliciously issued a press release defaming plaintiffs. The press release was issued in part in response to Congressional criticism of certain activities in the Office of Rent Stabilization and absolved defendant from blame at plaintiffs' expense. The Supreme Court held that defendant's claim of absolute privilege stood as a bar to maintenance of the suit. It was enough, the court concluded, that the actions taken by defendants were "within the outer perimeter of petitioner's [defendant's] line of duty * * * despite the allegations of malice in the complaint." Barr v. Matteo, at p. 575, 79 S.Ct. at p. 1341. The Supreme Court made it clear that this absolute privilege is not limited to high officials but extends to "officers of lower rank in the executive hierarchy." Barr v. Matteo, at p. 573, 79 S.Ct. at p. 1340. The rationale for this rule of absolute privilege which had been "admirably expressed" by Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. 1949), was quoted and approved:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if

it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome would ·dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * *" [Barr v. Matteo, at pp. 571–572, 79 S.Ct. at pp. 1339–1340, quoting Judge Learned Hand in Gregoire v. Biddle.]

Similarly, in Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959), the companion case to Barr v. Matteo, the Supreme Court held that circulation of a statement to Congressmen and newspapers which allegedly defamed plaintiffs was absolutely privileged. Howard, a Captain in the United States Navy and Commander of a Naval shipyard, submitted an affidavit, along with one from the Commandant of the appropriate Naval district, to the effect that the statement complained of was prepared and released as part of his official duties. The Supreme Court held, following its decision in Barr v. Matteo, that this record plainly showed that Howard's activities were absolutely privileged.

In the instant case, as in Barr v. Matteo and Howard v. Lyons, plaintiff alleges that defendants have maliciously defamed her to her injury. Here, as in Howard v. Lyons, affidavits have been submitted by defendants and their superiors[1] establishing that the actions complained of were a part of defendants' official duties and were certainly within the outer perimeter of their line of duty. Indeed, the defendants' actions in preparing and distributing the cartoon were not only authorized, but were in accordance with long-standing prior custom. (Stern's Affidavit; Bieri's Affidavit).

█ Whether defendants are entitled to an absolute privilege in this case should be determined according to federal and not state law. As the United States Supreme Court stated in Howard v. Lyons (1959), 360 U.S. 593, at page 597, 79 S.Ct. at page 1333:

"At the outset, we take note of a question which the Court of Appeals,

---

1. Defendant Stern is defendant Clark's superior. (Stern's Affidavit).

on its view of the case, did not find it necessary to resolve—whether the extent of the privilege in respect of civil liability for statements allegedly defamatory under state law which may be claimed by officers of the Federal Government, acting in the course of their duties, is a question as to which the federal courts are bound to follow state law. * * * No subject could be one of more peculiarly federal concern, and it would deny the very considerations which give the rule of privilege its being to leave determination of its extent to the vagaries of the laws of the several States. * * * We hold that the validity of petitioner's claim of absolute privilege must be judged by federal standards, to be formulated by the courts in the absence of legislative action by Congress."

The Fourth Circuit applied the doctrine of absolute privilege to government employees acting within the scope of their duties in Holmes v. Eddy, 341 F.2d 477 (4th Cir. 1965), cert. den. 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 149. Plaintiffs in that case contended that the defendant employees of the Securities and Exchange Commission had conspired to circulate and had circulated untruths about them in connection with an investigation of plaintiffs' securities activities. The court concluded that it is an "established principle of law that 'public officers when acting within the scope of their official authority are immune from suits for damages,'" and applied this principle to uphold the District Court's decision granting summary judgment for defendants.

In Pagano v. Martin, 397 F.2d 620 (4th Cir. 1968), the Fourth Circuit in a per curiam opinion affirmed the order of the District Court granting summary judgment in a libel action by a member of the Navy against his superior officers. In Heine v. Juri Raus, 399 F.2d 785 (4th Cir. 1968), the court held that absolute executive privilege was available to the defendant, a Central Intelligence Agency employee against whom plaintiff had brought a slander action, if the in-

struction given defendant to warn members of Estonian emigre groups that plaintiff was a Soviet Intelligence Agent was issued with approval of Central Intelligence Agency Director or of a subordinate authorized by the Director, or if the giving of the instruction was subsequently ratified and approved by such official.

Many other courts have applied the doctrine that government officials' activities are absolutely privileged in cases similar to the instant one; e. g., Sauber v. Glideman, 283 F.2d 941 (7th Cir. 1960), cert. den. 366 U.S. 906, 81 S.Ct. 1047, 6 L.Ed.2d 204 (alleged malicious defamatory statements made at press conferences were absolutely privileged); Le Burkien v. Notti, 365 F.2d 143 (7th Cir. 1966) (alleged malicious language reflecting on plaintiff's mental state was absolutely privileged); Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655 (2nd Cir. 1962), cert. den. 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (reports filed by government employee who allegedly knew they were false and which allegedly resulted in pecuniary harm to plaintiff were absolutely privileged); Brownfield v. Landon, 113 U.S.App.D.C. 248, 307 F.2d 389 (1962), cert. den. 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (alleged slanderous and malicious statements made by defendant, an Air Force officer, at a meeting were absolutely privileged although the meeting was with representatives of a private firm and a Congressman).

The facts in Sulger v. Pochyla, 397 F.2d 173 (9th Cir. 1968), cert. den. 393 U.S. 981, 89 S.Ct. 451, 21 L.Ed.2d 442, are very similar to the present case. There, plaintiff, the owner of a taxi business sued the commanding general of a fort and a colonel for statements made during an investigation. The statements were found to be within the "outer perimeter" of the line of duty and the order granting summary judgment was affirmed.

■■ The common thread in each of the above cases is that government em-

ployees engaged in activities within the outer perimeter, such as complained of in this action, are absolutely privileged and immune from civil suits arising from such activities. It is therefore

Ordered that, for the reasons above stated, the defendants' motion for summary judgment be, and the same hereby is granted, with each of the respective parties to bear their costs in the matter.