**Ophelia GREEN, Plaintiff,**

v.

**William H. JAMES, Defendant.**

**Civ. No. 70–3125.**

United States District Court,
D. Hawaii.

Nov. 1, 1971.

David C. Schutter, Honolulu, Hawaii, for plaintiff.

Joseph M. Gedan, Asst. U. S. Dist. Atty., Robert K. Fukuda, Honolulu, Hawaii, for defendant.

## DECISION AND ORDER

TAVARES, District Judge.

At the outset, the plaintiff moved this Court for an order disqualifying the United States Attorney from representing the defendant, William H. James, upon the ground that the United States had no interest to protect in the pending suit. It was urged that any judgment recovered against the defendant would not "expend itself on the public treasury or interfere with the administration of the Federal Government." Although the Court has already denied that motion for reasons given orally, nevertheless, because the reasoning orally stated for denying the motion bears equally upon the decision on the merits, it is repeated in substance and elaborated upon in the following pages.

In the alternative the plaintiff also moved this Court for an order preventing disclosure to the jury by the United States Attorney of the Federal Government's participation in this action. The Court having found orally that such representation by the United States was proper, the alternate motion was also denied.

After denial of such motion, the Court allowed further time during which the depositions of plaintiff and defendant were taken. Thereafter, further argument was had upon motion of the defendant to dismiss, and motion of plaintiff for summary judgment.

The original motion to disqualify the United States attorney and the above mentioned alternate motion recited that they were based upon the affidavit of Ophelia Green, "attached hereto and incorporated herein by reference as Exhibit 'A', the pleadings on file herein, and a Memorandum of Points and Authorities * * *". Although the affidavit was not attached originally to the motion, as filed on May 11, 1970, it was later filed in this court on June 9, 1970.

On page 2 of the plaintiff's memorandum in support of said original motion, counsel recited:

"The Complaint contains no allegation that the Defendant was either (1) acting under the color of his office and status or (2) had any right, title, or authority to do the acts complained of. As Plaintiff states in her Affidavit, the conduct claimed to be tortious was committed in the Defendant's individual capacity and not as an officer of the United States Army. Certainly there is no authority in the statutes of the United States or the Code of Military Justice which confers power on a Government official to commit an intentional tort. If such power did exist, it would be constitutionally void."

Paragraph I of the Complaint, among other allegations, recites " * * * All the incidents complained of herein took place within the City and County of Honolulu, State of Hawaii and more specifically took place within the territorial limits of Schofield Barracks a Federal Military Reservation contained therein."

Under Count One it is alleged that on December 27, 1969, the Plaintiff was driving along Waianae Street at about 3:30 p. m. within the Military Reservation known as Schofield Barracks when she was stopped by the occupant of another vehicle, which person identified himself as a full "Colonel in the United States Army," Colonel William H. James, who threatened to "drag her in and have her booked for speeding" because she "was going 30 miles per hour in a 25 mile per hour zone."

Again in Count Five the Complaint recites that:

"Despite these facts, Defendant James, who is a full Colonel in the United States Army, then went to the Schofield Barracks Provost Marshal's Office * * * and falsely alleged" etc.

Under Count Six, III, it is stated,

" * * * Defendant James did there, at a time which is unknown to Plaintiff and to a person whose identity is unknown to Plaintiff, claim the influence and privilege of his rank against

a subordinate United States Army officer by ordering said officer to issue a traffic ticket to Plaintiff."

Count Seven, II, contains a further allegation:

"As a result of the wrongful, false, and malicious allegations of the Defendant and as a result of his wrongful and malicious use of his Army rank against a subordinate a traffic ticket was issued to the Plaintiff which traffic ticket became a part of the military record of her huband who is a Sergeant in the United States Army within the State of Hawaii."

In the light of such allegations, the Court disagrees with counsel's contention that the Complaint contains no allegation that the Defendant was * * * (1) acting under color of his office and status, as set forth above.

The burden would be upon the Plaintiff to allege and prove that Defendant, if acting under the color of his office or status, had no right, title or authority to do the acts complained of because of some statutory limitation upon his powers, or if such action was within powers granted, that the exercise of the granted power was constitutionally void.

No showing along this vein has been made. Plaintiff has been content to merely recite that "Certainly there is no authority in the statutes of the United States * * * which confers power on a Government official to commit an intentional tort." The Court is satisfied that plaintiff's characterization of a tort as "intentional" does not necessarily make it such. If such were the law, the application of the Federal Tort Claims Act could be completely thwarted by the mere making of such an allegation in the complaint.

The Court knows of no federal act which confers upon any employee of the Government a mere privilege to negligently operate a motor vehicle within the scope of his authority and to thereby inflict injury upon anyone. The Tort Claims Act comes into play when an injured claimant contends that his tortious injury resulted from the negligent acts, or even willful and wanton acts, of an employee, unless within the statutory exemptions.

Morgan v. Willingham, 383 F.2d 139, a 10th Circuit 1967 case originally heavily relied upon by plaintiff's first memorandum, was expressly reversed by Willingham v. Morgan, 395 U.S. 402, 89 S. Ct. 1813, 23 L.Ed.2d 396, decided June 9, 1969, shortly after the filing of plaintiff's memorandum.

■ Representation by the Attorney General or the United States Attorney in this matter appears to be most proper. Sections 513, 514, 517 of Title 28, U.S. Code appear sufficiently broad to authorize such representation, and it further appears to be very clear that initial determinations at least as regards the existence of governmental interest, will be made unilaterally within Governmental channels. There is no indication whatever that Congress ever intended to grant options or rights of election to those who assert claims which may or may not be of interest to the Government. This rationale is further borne out by 28 U.S. Code § 1442 and § 1442a. as related to the present action. Congress has expressly provided for the removal of this type of action into the federal judicial system, in reliance upon federal supremacy in such matters, thereby eliminating all risks of challenge to the sovereign immunity of the United States.

Congress saw fit to waive sovereign immunity by enactment of the Federal Tort Claims Act and to provide a means of making claims against the United States and for civil actions on such claims. Original and exclusive jurisdiction in such matter was placed in the United States District Courts by 28 U.S. C. 1346(b), which provides in part:

"* * * the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury * * * caused by the

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment * * * "

By 28 U.S.C. § 2680, however, Congress saw fit to specifically provide for certain "exceptions" to the provisions of the Act and particularly 28 U.S.C. § 1346 (b). 28 U.S.C. § 2680(h) provides, as a specific exception, as follows:

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

The leading case in this area appears to be Barr v. Matteo, 360 U.S. 954, 79 S.Ct. 1335, 3 L.Ed.2d 1434 decided in 1959. There, the defendant in the original action was Acting Director of the Office of Rent Stabilization. The plaintiffs were subordinate employees in the same office. The defendant had caused a press release to be issued announcing his intention to suspend the plaintiffs because of certain activities in which they had engaged. The plaintiffs brought action against the defendant individually for libel, alleging malice. Although the Supreme Court decision represents a five to four holding in which three separate dissents were filed, the case nevertheless remains the law of the land and upholds defendant's plea of absolute privilege.

The majority opinion recognizes that the law of privilege as a defense by officers of government to civil damage suits for defamation and kindred torts has, to a considerable extent been judicially made. The opinion traces the absolute privilege granted to members of both Houses of Congress by Act I, Section 6 of the United States Constitution through early Court holdings granting absolute privilege to judges with respect to actions taken by them in the exercise of judicial functions, irrespective of the motives with which those acts were performed and extended thence to executive officers of the Government. The Court says:

"We do not think that the principle announced in Vilas can be properly restricted to executive officers of cabinet rank, and in fact it never has been so restricted by the lower federal courts. The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy."

The court referred to Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L. Ed. 780, wherein suit was brought against the Postmaster General alleging he had maliciously circulated matter which he knew to be false, intended to deceive all to the detriment of the plaintiff.

Again, at page 576 of 360 U.S., at page 1342 of 79 S.Ct. of the *Barr* opinion, supra, the court says:

"We are told that we should forbear from sanctioning any such rule of absolute privilege lest it open the door to wholesale oppression and abuses on the part of unscrupulous government officials. It is perhaps enough to say that fears of this sort have not been realized within the wide area of government where a judicially formulated absolute privilege of broad scope has long existed. * * * We think that we should not be deterred from establishing the rule which we announce today by any such remote forebodings."

The *Barr* case, supra, was companion to another case decided on the same day, e. g., Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454. In that case the petitioner was a Captain in the Navy and Commander of the Boston Naval Shipyard. He was sued in a Federal District Court for alleged malicious libel, to which he pleaded absolute privilege.

In sustaining the privilege, the Court said at page 597, 79 S.Ct. at page 1334:

> "The authority of a federal officer to act derives from federal sources, and the rule which recognizes a privilege under appropriate circumstances as to statements made in the course of duty is one designed to promote the effective functioning of the Federal Government. No subject could be one of more peculiarly federal concern, and it would deny the very considerations which give the rule of privilege its being to leave determination of its extent to the vagaries of the laws of the several States. * * *"

The *Barr* case, supra, was very recently mentioned with apparent approval in the case of Willingham v. Morgan, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396. In this case Morgan was a prisoner in Leavenworth. He complained that Willingham, the warden, and Jarvis, the Chief Medical Officer, had, on numerous occasions, inoculated him with deleterious foreign substance, and had assaulted him, beaten him and tortured him in various ways. The United States District Court granted removal under 28 U.S.C. § 1442(a) (1) after Willingham and Jarvis petitioned that court, alleging that anything done by them had been in the course of their duties as officers of the United States and under color of such offices. The District Court denied a motion to remand to the state courts and granted summary judgment, holding that recovery of damages was barred by the official immunity doctrine of *Barr,* supra. Thereafter, the Court of Appeals for the Tenth Circuit found insufficient basis in the record to support the District Court's refusal to remand and without touching the immunity question, ordered the matter back to the District Court, 383 F.2d 139 (10 Cir. 1967).

In the Supreme Court the Government argued that the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. The Court, in reversing the Circuit Court, said, 395 U.S. page 405, 89 S.Ct. page 1815, "On this view, the test for removal should be broader, not narrower, than the test for official immunity. We agree."

Turning to the immunity feature of the case, the Supreme Court said, page 409, 89 S.Ct. page 1817:

> "In a civil suit of this nature, we think it was sufficient for petitioners to have shown that their relationship to respondent derived solely from their official duties. Past cases have interpreted the 'color of office' test to require a showing of a 'causal connection' between the charged conduct and asserted official authority. * * * In this case, once petitioners had shown that their only contact with respondent occurred inside the penitentiary, while they were performing their duties, we believe that they had demonstrated the required 'causal connection.' The connection consists, simply enough, of the undisputed fact that petitioners were on duty, at their place of federal employment, at all the relevant times. * * *"

In the very recent case of Frost v. Stern and Clark, 298 F.Supp. 778 (D.S.C. 1969) the District Court held that Government employees who were engaged in activities within the outer perimeter of their line of duty were absolutely privileged and immune from civil suits arising from such activities. The matter was before the court on defendants' motion to dismiss, or in the alternative for summary judgment.

Plaintiff, a civilian employee at the Naval Supply Center, Charleston, South Carolina, instituted action in state court against Stern, a Captain in the Navy and Commander of the Supply Center and against Clark, a civilian employed at the Center as a Staff Illustrator. Plaintiff sought to recover $100,000 as actual and punitive damages arising from the malicious preparation and distribution by Stern and Clark of a cartoon which allegedly held plaintiff up to ridicule and was defamatory.

Defendants duly petitioned for removal pursuant to 28 U.S.C. § 1442(a) (1) alleging their Navy employment and that their actions set forth in the complaint were all done while acting under color of their offices and within the scope of authority of their offices. The case was thereupon removed to the Federal District Court.

The court discusses Barr v. Matteo and Howard v. Lyons, supra, and then turns to a number of cases wherein the Circuit Courts have applied immunity, as enunciated by the Supreme Court, to a variety of factual situations. One of these cases which is of particular interest here is Sulger v. Pochyla, 397 F.2d 173 (9th Cir. 1968) cert. den. 393 U.S. 981, 89 S.Ct. 451, 21 L.Ed.2d 442. There, plaintiff, the owner of a taxi business, sued the commanding general of a fort and a colonel for statements made during an investigation into practices and certain phases of the plaintiff's business. The statements were found to be within the "outer perimeter" of the line of duty and the order granting summary judgment was affirmed.

The *Frost* case recites:

"The common thread in each of the above cases is that government employees engaged in activities within the outer perimeter, such as complained of in this action, are absolutely privileged and immune from civil suits arising from such activities. * * *" (298 F.Supp. pp. 781–782)

A later Ninth Circuit case, Urbina v. Gilfilen, 411 F.2d 546 (9th Cir. 1969) arose in the United States District Court for the District of Hawaii. Defendant's motion for summary judgment was made and granted upon the ground that the memorandum concerned was written by defendant in the performance of her duties as an employee of the United States and that, as against a claim of libel, she therefore had the defense of absolute privilege. Plaintiff claimed on appeal that a genuine issue of fact had been presented, but the District Court had ruled against this contention because the affidavit of plaintiff was not based upon plaintiff's personal knowledge and did not set forth facts which would have been admissible in evidence. The Circuit Court affirmed.

Other cases which might have a bearing on the question of immunity include: Simpson v. McVey, 217 F.Supp. 575 (S.D. Ohio E.D., 1963)—(acts to be within scope of employment need not be prescribed by statute to show proper relation or connection); Simons v. Vinson, 394 F.2d 732 (5 Cir. 1968)—U. S. indispensable party to action regarding accreted land. Must look to facts to determine sovereign immunity).

Another line of cases is represented by Malone v. Bowdoin, 369 U.S. 643, 82 S. Ct. 980, 8 L.Ed.2d 168. That case involved property rights in which the United States government had an interest. The court at page 647, 82 S.Ct. at page 983, says:

"Cutting through the tangle of previous decisions, the Court expressly postulated the rule that the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is 'not within the officer's statutory powers, or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.'" 337 U.S., at 702 [69 S.Ct., at 1467.]

In the above quotation the court had reference to Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L. Ed. 1628, the District Court's opinion appearing sub nom. Doe v. Roe, 136 F. Supp. 407.

The doctrine espoused by Malone v. Bowdoin is explored further by the Supreme Court in Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15, and in City of Fresno v. California, 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28. In *Dugan*, the claimants of water rights and the San Joaquin River brought suit against the United States, local officials of the United States Bureau of Reclamation and a number of irrigation and

utility districts to enjoin the storing and diversion of water. Held that the Act of Congress relied upon by plaintiffs did not constitute a consent that the United States be made a party to the suit and it was of necessity dismissed for want of jurisdiction. The suit to enjoin the named officials was in reality a suit against the United States and therefore the suit was dismissed as to them. The *City of Fresno* suit also involved San Joaquin River water and the court again held that the suit against the United States must fail for lack of consent, and the suit as against the named officials also failed as being in reality an action against the United States.

As a rather interesting side light, Bland v. Britt, 271 F.2d 193 (4 Cir. 1959) holds that the United States does not become a party to a suit merely because the Attorney General or the United States Attorney represents a federal employee sued individually. In the *Bland* case, *Bland* was a Post Office employee. Plaintiff Britt had parked his automobile beside a curb. Bland parked his mail truck behind Britt's car. Bland started the motor, released his brake, but before he could engage the clutch, Bland's vehicle moved forward, struck the rear of Britt's vehicle, which in turn rolled forward some 35 to 40 yards to a point where Britt's vehicle struck another parked car, and it was in the second collision that Britt's vehicle suffered damage.

Britt sued Bland individually as the sole defendant, and he alone was served with process. The U. S. Attorney answered for Bland, and apparently also represented the defendant during the trial. When the testimony was concluded, the court found Bland negligent and held that Britt's failure to set the brake of his vehicle did not constitute contributory negligence. The court noted that the facts disclosed liability under the Federal Tort Claims Act, 28 U.S.C.A. § 2674, and that since Bland was represented by the U. S. Attorney, he might then and there add the United States as a co-defendant. Judgment was entered against the Government as well as against Bland.

On appeal it was held that the court was without jurisdiction to enter judgment against the Government, since the United States does not become a party to a suit merely because the Attorney General or a U. S. Attorney represents a federal employee sued individually. Report cites United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; Land v. Dollar, 1946, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209.

The court says at p. 194 of 271 F.2d:

"Moreover, there was no service of summons and complaint upon the United States Attorney for the District in which the suit was brought, nor upon the Attorney General, both of which are required by Rule 4(d) (4) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The judgment against the Government is completely invalid, since it was not a party."

The foregoing case seems to stand alone. At least it represents a result which would not be reached under 28 U.S.C.A. § 2679 and § 2680 as presently amended. The *Bland* case was decided in 1959. The above sections of Title 28 were amended in 1961 and again in 1966. Today there is very little question as to the ultimate disposition of suits against federal officers or employees which originate in State courts. Procedurally they are properly removed to federal district courts, 28 U.S.C.A. § 1441 et seq. If the case be one which falls within 28 U.S. C.A. § 2679, the government will initiate action to dismiss the action against the named officer or employee and to substitute the United States as a party defendant. The determination as to scope of employment has been left to the Attorney General under 28 U.S.C.A. § 2679 (d). On the other hand, if the suit commenced in state court falls within the exceptions enumerated in 28 U.S.C.A. § 2680, the case is also properly removed to a federal district court, the defendant being represented by a United States District Attorney, and the sovereign im-

munity of the United States is thereupon interposed. The immunity of the United States shields and protects the officer or employee if his acts were within the "outer perimeter" of his duties as discussed in the cases above. In practice, the Attorney General determines the duty status of the officer or employee in the first instance, thereby deciding whether representation will be provided to the officer or employee. Determination is also made as to whether or not removal will be undertaken. In those cases falling within the exceptions spelled out under 28 U.S.C.A. § 2680, there is no need to substitute the Government as a party defendant and to make such a substitution would merely impose an extra or additional procedural step which in practice has been eliminated.

The annotations in the pocket part to Section 2680 cite a goodly number of additional cases bearing upon immunity, particularly notes 58 et seq.

The record and the evidence presented clearly indicate that the defendant, in committing the acts and making the statements complained of, was acting in his capacity as adjutant general of the command to which he was attached, and that the acts if not expressly within his prescribed duties, were at least within the outer perimeter of such duties. Therefore, the motion of the defendant to dismiss is granted upon the ground that the acts and statements were privileged under the reasoning above set forth.

For the reasons above stated, also, the motion of the plaintiff for summary judgment is denied.

Lest the Court be thought to have overlooked it, this Court has given due consideration to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which held in a divided opinion that violation of a person's Fourth Amendment rights by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his own conduct. The last paragraph of the majority opinion in that case states:

"In addition to holding that petitioner's complaint had failed to state facts making out a cause of action, the District Court ruled that in any event respondents were immune from liability by virtue of their official position. 276 F.Supp. [12], at 15. *This question was not passed upon by the Court of Appeals, and accordingly we do not consider it here.* The judgment of the Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion." (emphasis added).

## ORDER

Pursuant to the foregoing Decision, it is ordered:

(1) That the plaintiff's motion for summary judgment is denied;

(2) That the defendant's motion for dismissal is granted,

and this action is hereby dismissed.