490 F.2d 1154
 Isaac FLOYD et al., Plaintiffs-Appellants,
v.
E. D. TRICE, Superintendent of Schools of the Texarkana
Public School District No. 7; and the Board of
Education of the Texarkana, Arkansas,
Public School District No. 7,
Defendants-Appellees.
 No. 73-1474.
 United States Court of Appeals, Eighth Circuit.
 Submitted Nov. 15, 1973.
Decided Jan. 14, 1974, Rehearing and Rehearing En Banc
Denied Feb. 5, 1974.
 
 John W. Walker, Little Rock, Ark., for appellants.
 Ned A. Stewart, Jr., Texarkana, Ark., for appellee.
 Before GIBSON, LAY and HEANEY, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 Seven black Texarkana students commenced a class action in the United States District Court for the Western District of Arkansas on behalf of themselves and other black students similarly situated. The Superintendent of Schools and the Board of Education of Texarkana Public School District No. 7 were named as defendants. The plaintiffs alleged that the defendants, acting under color of law, deprived them of rights secured by the Constitution and by the laws of the United States, particularly 42 U.S.C. 1981, 1983, 1985, 1986 and 1988. They claimed that (1) the defendants deny black teachers an opportunity to hold positions of authority in the Texarkana secondary schools; (2) the defendants deny or restrict participation of black students in school activities because of race; (3) the defendants subject black students to discriminatory disciplinary rules and regulations; (4) the defendants permit the use of racial epithets by white students against black students. The plaintiffs then alleged that the stated 'policies, practices, customs and usages' (hereinafter referred to as 'policies') violate plaintiffs' right to equal educational opportunities and due process of law. They also alleged that they were fearful that if the defendants were permitted to operate the school under its current policies, the plaintiffs and other members of the class would be deprived of an equal opportunity to learn about and participate in the present and future environment.
 
 
 2
 The plaintiffs requested declaratory and injunctive relief. They asked the District Court to require the defendants to: (1) integrate the school staff, programs and activities; (2) establish policies which tend to reduce friction between students on the basis of race or color; (3) adopt and implement objective standards for discipline; (4) discontinue racially discriminatory practices relating to suspension, expulsion and discipline; and (5) eliminate all vestiges of racial segregation within the school system.
 
 
 3
 The District Court granted the defendants' motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. It reasoned that:
 
 
 4
 (1) The plaintiffs' failure to allege that the defendant Superintendent of Schools, Trice, was in any manner responsible for racially discriminatory practices was fatal to their claim against him.[1]
 
 
 5
 (2) The plaintiffs' failure to allege that they had been personally injured by the defendants' policies made them ineligible to maintain a class action on behalf of those who may have been injured by such policies because they were not members of that class and no relief could be given to a class consisting of those who feared injury in the future.
 
 
 6
 (3) The plaintiffs' allegation that black students were not represented proportionately in school activities and programs failed to allege the violation of a constitutional right.
 
 
 7
 (4) The plaintiffs' allegation that black history was not being taught by black teachers failed to allege the violation of a constitutional right.
 
 
 8
 In appraising the sufficiency of the complaint, we follow the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson,355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Barnes v. Dorsey,480 F.2d 1057 (8th Cir. 1973); Wilkerson v. City of Coralville, 478 F.2d 709 (8th Cir. 1973); Thomason v. Hospital T. V. Rentals, Inc., 272 F.2d 263 (8th Cir. 1959). We discuss the trial court's findings in the light of this rule.
 
 
 9
 SUFFICIENCY OF THE COMPLAINT AS TO SUPERINTENDENT TRICE
 
 
 10
 The specific allegation in the complaint that E. D. Trice was the school district's chief administrative officer and the more general allegations connecting all of the defendants with the alleged discriminatory policies are sufficient when read together to withstand the objection that the complaint fails to state a claim against him upon which relief can be granted. Indeed, the Superintendent of Schools is a proper party when it is alleged that the schools which he heads are guilty of discriminatory policies. Cooper v. Aaron, 358 U.S. 1, 15-16, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). This is not to say that a school superintendent is ordinarily responsible for individual acts of discrimination committed by teachers or employees. It is only to say that when discriminatory policies are alleged, the plaintiffs must be given an opportunity to prove discrimination and that the defendant superintendent is wholly or partially responsible for the alleged violations of the Constitution and laws of the United States.
 
 
 11
 CLAIMED FAILURE TO ALLEGE PRESENT INJURY TO PLAINTIFFS
 
 
 12
 We read the complaint as alleging that present policies are discriminatory in nature and are inflicting present injury on the plaintiffs and other black students. We also read it as alleging that the discriminatory policies will have a further deleterious effect on the students after they graduate and move into the adult world. The latter allegation is supportive of the first and is entirely proper. It points to the fact that discriminatory policies perpetuate the kind of school system and the resulting lack of future opportunity dealt with by the Supreme Court in Brown v. Board of Education of Topeka, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954):
 
 
 13
 Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms.
 
 PROPORTIONATE REPRESENTATION AND BLACK HISTORY
 
 14
 The trial court held that the complaint failed to state a claim upon which relief could be granted insofar as it demanded that blacks be proportionately represented in all school offices, programs and activities. Apparently, the court reached the conclusion that proportionate representation was the essence of the plaintiffs' claim from an examination of Appendix A attached to the complaint. That appendix set forth a list of grievances and demands previously presented to the Board of Education by parents who stated they were qualified voters in the school district. The petition demanded black teachers for black history classes, proportionate representation for blacks in class offices, student council and clubs and organizations. The petition also demanded that black teachers be hired in proportion to black students. We do not read the complaint as incorporating all of those specific demands. We rather read the complaint as requesting that school staff,[2] programs and activities be fully integrated, that policies tending to reduce friction between students of different races be implemented, that objective disciplinary standards be adopted and fairly applied, that racially discriminatory suspension, expulsion and disciplinary policies be discontinued, and that all vestiges of segregation be eliminated from the school system. Prior case law teaches that relief may be given for such claims. See, Plaquemines Parish School Board v. United States, 415 F.2d 817 (5th Cir. 1969); Henry v. Clarksdale Municipal Separate School Dist., 409 F.2d 682 (5th Cir.), cert. denied, 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (1969); United States v. Jefferson County Board of Education, 380 F.2d 385 (5th Cir.), cert. denied, 389 U.S. 840, 88 S.Ct. 77, 19 L.Ed.2d 104 (1967). Cf., Clark v. Board of Education of Little Rock School Dist., 449 F.2d 493, 496 (8th Cir. 1971), cert. denied, 405 U.S. 936, 92 S.Ct. 954, 30 L.Ed.2d 812 (1972). Even if a complaint asks for relief beyond that ordinarily permissible, the appropriate action is to tailor the relief rather than to dismiss the complaint for failure to state a claim upon which relief can be granted if in fact cognizable claims are pleaded. It is for the trial court to fashion relief so as to give every student an equal opportunity to participate in all school activities, programs and offices and to eliminate every vestige of segregation within the school system.[3]
 
 
 15
 Appellants' request for attorneys fees on this appeal is denied. Costs will be taxed to the appellees.
 
 
 16
 Reversed and remanded.
 
 
 
 [1]
 Appellees also contend, as they did in the District Court, that the Board of Education is not a suable entity under Arkansas law. This contention may have merit. See, Arkansas Statutes, Annotated 80-402 (1931); Blount v. Ladue School District, 321 F.Supp. 1245, 1250 (E.D.Mo.1970); Miller v. Board of Education of District of Columbia, 106 F.Supp. 988, 989 (D.D.C.1952). However, the District Court has not ruled on this contention, and we think it appropriate that it do so first
 
 
 [2]
 The complaint, as we read it, states a cognizable claim that blacks are denied the opportunity to hold administrative positions within the school district. See, Kelley v. Altheimer, Arkansas Public School Dist. No. 22, 378 F.2d 483 (8th Cir. 1967)
 
 
 [3]
 The desegregation plans of the Texarkana School District are the subject of a legal action in the District of Columbia. See, Adams v. Richardson, 351 F.Supp. 636 (D.D.C.1972), 356 F.Supp. 92 (D.D.C.1973), aff'd with modification, 480 F.2d 1159 (D.D.Cir.1973)