**Slyvester HARRIS, Plaintiff-Appellee,**

v.

**Richard G. HARVEY, Jr., Defendant-Appellant.**

No. 78–2057.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1979.

Decided Aug. 20, 1979.

As Changed on Denial of Rehearing and Rehearing En Banc Nov. 1, 1979.

---

1. The discharge was granted to both husband and wife on Feb. 5, 1976.

Rodolphe J. A. DeSeife, Glen Ellyn, Ill., for defendant-appellant.

John Sundquist, Milwaukee, Wis., amicus curiae.

Paul J. Gossens, Milwaukee, Wis., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and CAMPBELL, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

This action was brought under the Civil Rights Act (42 U.S.C. § 1983) by a former Racine, Wisconsin, police lieutenant against a Racine County, Wisconsin, judge[1] and against Gerald Clickner, Racine County District Attorney. Plaintiff claimed that defendants' actions deprived him of Fourteenth Amendment due process and equal protection of the laws. We are setting out the allegations of the complaint in some detail (and in the same order as the pleader) because the jury found the key allegations sufficiently proved.[2]

Plaintiff alleged that on January 8, 1974, Dale Vorlob, a paroled felon, was charged with felonious battery for attacking plaintiff with a pistol. On January 11, 1974, Vorlob told District Attorney Clickner that on January 10 plaintiff pistol-whipped Vorlob and threatened him with bodily harm if Vorlob testified against Harris at Vorlob's battery trial. Vorlob was convicted in a jury trial on March 27, 1974.

According to the complaint, Clickner communicated Vorlob's statements to Judge Harvey who urged Clickner to have a complaint sworn out against plaintiff, and on January 13, Clickner contacted the Racine Chief of Police to obtain help in the investigation of Vorlob's charges against plaintiff. However, after an internal investigation the Racine Police Department found Vorlob's charges baseless and therefore initiated no disciplinary proceeding against plaintiff. Nevertheless, on January 23, Clickner, "acting in his official capacity under color

of law," maliciously authorized a petition to Judge Harvey for a secret John Doe investigation of the plaintiff pursuant to Wisconsin law. See Wis.Stat. § 968.26.[3]

Plaintiff alleged that prior to January 9, 1974, Judge Harvey had told Racine Assistant Chief of Police Hagopian that he was going to get that "black bastard," the plaintiff. On numerous occasions prior to January 21, Judge Harvey "under color of law and beyond his jurisdiction" maliciously stated to many people that the plaintiff received preferential treatment and favors from the Racine Police Department because he was black.

On or before January 9, Judge Harvey supposedly "maliciously made racial remarks which were intended to reflect upon associates, friends and attorneys of Harris in an effort to have them disassociate themselves from Plaintiff Harris."

Commencing at 7:30 p. m. on January 29, Judge Harvey presided over the John Doe proceeding where assistant district attorneys authorized by Clickner "under color of law maliciously presented secret testimony against Plaintiff Harris." Plaintiff charged that during that proceeding, Judge Harvey "acted within his jurisdiction as county judge under color of law," maliciously threatening witnesses with prosecution and perjury because they would not incriminate plaintiff.

On January 30, Judge Harvey allegedly informed a newspaper reporter that he was conducting a John Doe hearing at which the plaintiff Vorlob swore that Harris beat and threatened him, and Harvey added that plaintiff would be charged with criminal violations.

---

[*] Honorable William J. Campbell, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

[1]. Defendant Harvey was then a Racine County judge but became a Circuit Judge of Racine County through a 1977 change in Wisconsin's judicial system.

[2]. For sake of brevity we will not summarize the copious evidence as to defendant's racial motivation. Since it was overwhelming, defendant does not even contend otherwise in his

reply brief and only includes the point in the last section of his principal brief concerning the trial court's supposedly erroneous evidentiary rulings. Insufficiency of the evidence was not argued orally.

[3]. A John Doe hearing is a procedure authorized by Wisconsin law in which a judge hears testimony on whether a crime has been committed. If he finds there is probable cause to charge the accused, he issues an arrest warrant.

On January 31, Vorlob signed three secret complaints against plaintiff, and Judge Harvey, "acting in his official capacity as judge under color of law," maliciously and without probable cause issued an arrest warrant for plaintiff for allegedly violating Wisconsin Statutes §§ 940.20 [misdemeanor: battery], 941.20 [misdemeanor: aiming and pointing firearm] and 943.30 [felony: threatening a witness]. On the same date Judge Harvey read the warrants for the arrest of plaintiff over a radio station as well as a press release prepared by defendant Clickner, and maliciously informed the press that plaintiff refused to testify at the John Doe proceeding involving Vorlob's charges against Harris.

The complaint also charged that on February 4, Judge Harvey maliciously stated at plaintiff's initial court appearance that the other Racine County judges wished to be disqualified from trying plaintiff. On the same date defendant Harvey called for the dismissal of plaintiff from his police department job and attempted to have the Chief of Police suspend or fire him. On the next day Judge Harvey allegedly maliciously stated that plaintiff should be forced to take a lie detector test or be fired on the untrue ground that Vorlob had passed such a test.

Before plaintiff's trial on any of the criminal complaints, commencing on February 4, Judge Harvey in public and in the public media commented on the merits of the Vorlob-related criminal charges against plaintiff and publicly called him "a fixer, a briber, and a sycophant."

Supposedly Judge Harvey on March 11 maliciously submitted an affidavit in a legal proceeding making racial and derogatory remarks about plaintiff.[4] Both defendants allegedly met with officials of the Wisconsin Attorney General's office and threatened to accuse plaintiff of bribery, ticket-fixing, and other illegal activities in the public press unless the Attorney General would "do something about Harvey."

On February 4, plaintiff was suspended with pay by the Racine Police Department "after being pressured by Harvey," and on February 5 Judge Harvey maliciously accused the Chief of Police of engaging in the cover-up because plaintiff "was not ordered to take a lie detector test and because he was not suspended without pay."

On April 8, Judge Harvey publicly accused plaintiff of being on a paid vacation and termed his defense of the criminal charges against him to be "nonsense." On August 8, Judge Harvey maliciously accused plaintiff of unlawful conduct and publicly wrote that plaintiff was engaging in criminal conduct.

On August 15, Judge Harvey wrote the City Attorney that the police department should take disciplinary action against plaintiff or else Judge Harvey would commence criminal proceedings against him. On September 6, Judge Harvey wrote the City Attorney and accused him of whitewashing plaintiff's "documented" violation of Wisconsin Statute § 946.12(1) [misconduct in office]. On November 22, Vorlob told plaintiff and various Racine officials that he did not know who beat him on January 10 and had so told defendant Clickner.

On February 11, 1975, the two misdemeanor complaints against Harris were dismissed by another judge "because of the manner in which Harvey conducted the John Doe."[5]

On February 12, 1975, Judge Harvey wrote a derogatory letter to the judge who had dismissed the misdemeanor charges against the plaintiff and caused the letter to be read by the other Racine County judges.

On February 2, 1974 [sic 1975], defendants commenced another secret John Doe [ticket-fixing] investigation of plaintiff and others, and Judge Harvey on numerous oc-

---

4. Summary judgment was subsequently granted to defendant Harvey with respect to this charge contained in paragraph 30 of the complaint. See 436 F.Supp. 143 at 151.

5. The felony charge had been dismissed on May 31, 1974, by still another judge for lack of probable cause.

casions made racial remarks about plaintiff to get him off the police force and arranged for the search of records of the police department and the court system in order to make a list of all cases against anyone named Harris in the past ten years.

On July 8, 1975, Judge Harvey wrote a letter to the Chief of Police accusing plaintiff of destroying police records and stating "that the Harris family appears to be immune from prosecution" and further indicating that he would release the information to the Racine *Journal-Times.*

As a result of the foregoing actions plaintiff alleged he was deprived of due process and equal protection of law under the Fourteenth Amendment. He sought injunctive relief, $250,000 in compensatory damages, $1,000,000 in punitive damages, and attorneys' fees.

On August 5, 1976, Judge Gordon dismissed the action against the District Attorney of Racine County because no violation of a federally protected or constitutional right was charged against him.[6] At the same time Judge Gordon denied Judge Harvey's motion for dismissal because a violation of Harris' Fourteenth Amendment right to equal protection of the laws was adequately alleged with respect to Judge Harvey and because his acts were allegedly racially motivated and committed outside of his jurisdiction. He also held that the complaint did properly allege that the offending acts were performed under color of state law. 419 F.Supp. 30. On June 30, 1977, Judge Gordon granted summary judgment for defendant as to the plaintiff's claim for an injunction on the grounds that the prospect of future criminal proceedings against Harris was too remote to present a case or controversy and that plaintiff had an adequate remedy at law. Holding that under *Paul v. Davis, supra,* plaintiff's claim that his job had become "unsatisfying" and "totally unbearable" did not sufficiently show a deprivation of a liberty interest, Judge Gordon dismissed the plaintiff's due process claim. However, the court denied defendant summary judgment with respect to plaintiff's equal protection claim because plaintiff's allegations that his loss of credit, injury to reputation, and deprivation of opportunities for advancement were inflicted through racially discriminatory treatment were sufficient to state an equal protection claim and the question of motivation was one for the jury. Finally, the district court granted summary judgment to Judge Harvey as to the allegation in paragraph 30 of the Complaint that on March 11 he had maliciously executed an affidavit in a legal proceeding and in the affidavit made racial and derogatory remarks about plaintiff. The reason for holding paragraph 30 to be insufficient was because "the legal proceeding in which the affidavit was submitted was intimately related to matters within the jurisdiction of the defendant's court." 436 F.Supp. 143, 151.[7] The only claim remaining for the jury was whether the defendant had through non-judicial acts motivated by racial animosity inflicted injury— including loss of employment opportunity, injury to reputation and emotional distress—on the plaintiff.

The jury trial commenced on February 27, 1978. During the trial Judge Gordon ruled as a matter of law that defendant acted under color of law and in the absence of all jurisdiction (App. 18). On March 8 the jury returned a special verdict that Judge Harvey's actions concerning the

6. Apparently it was not alleged that Clickner acted out of racial animus. Therefore only the due process claim remained against him and the district court held that under *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, the allegations of the complaint did not amount to a deprivation of due process.

7. The judge also noted that only equitable relief was sought on the basis of allegations that defendant conducted judicial proceedings maliciously and unfairly. Although the doctrine of judicial immunity does not bar injunctive relief, summary judgment had already been granted for the defendant on the equitable claims. Plaintiff's only claim to damages relating to the conduct of judicial proceedings was based on the affidavit executed by Judge Harvey. With the grant of summary judgment for the defendant on that issue, no claim involving judicial proceedings remained to be considered by the jury.

plaintiff were racially motivated, that plaintiff was injured by such racially motivated acts with respect to his reputation in the community, reputation and working ability within the police department, and opportunities for advancement within that department. The jury also found that Judge Harvey's racially motivated acts had caused the plaintiff humiliation, embarrassment and mental distress and interfered with his continued employment. The jury set compensatory damages at $60,000. It also found that Judge Harvey's actions were done maliciously, wantonly or oppressively and therefore assessed $200,000 punitive damages against him. In a lengthy and persuasive opinion the district judge refused to disturb the verdict (App. 26–38) and later awarded plaintiff attorneys' fees in the amount of $7,500 (App. 39) in lieu of the $39,120 claimed (App. 38). We affirm.

### Neither Judicial Nor Prosecutorial Immunity Protects the Acts for Which Defendant Was Held Liable.

■ In support of reversal, defendant's principal argument is that he is immune from any liability to plaintiff for damages arising from his acts on the ground that he enjoyed judicial and prosecutorial immunity. As to the former, the trial judge properly applied the rule of *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, in holding that the acts perpetrated outside of Judge Harvey's courtroom and not then a part of his judicial functions were undertaken in the "absence of all jurisdiction." These acts involved the defendant's repeated communications to the press and to city officials over the course of more than a year. These communications were critical of plaintiff and called for action to be taken against him. Many of them were made while plaintiff was awaiting trial on the criminal charges stemming from the John Doe proceeding. Such acts were not judicial because they were not functions normally performed by a judge, and were not "to the expectations of the parties" in that as to these acts the parties did not deal with him in his judicial capacity. 435 U.S. at 362, 98 S.Ct. at 1107. Accordingly, the trial judge instructed the jury that although damages could not be assessed against Judge Harvey for conducting the John Doe proceedings, he could be held liable for his extrajudicial acts. Since no liability was imposed where Judge Harvey enjoyed judicial immunity, no error was committed on that score.

■ As to prosecutorial immunity, defendant relies on *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. Since that case only immunizes a prosecutor when he is "initiating a prosecution and * * * presenting the State's case" (424 U.S. at 431, 96 S.Ct. at 995), it is of no avail to this defendant. His only prosecutorial function was in connection with his conduct of the John Doe proceedings and the jury had been instructed not to assess any damages against him on that account. Therefore, his prosecutorial immunity was properly observed.

### Defense of Official Immunity Fails.

■ In the district court and here defendant also contended that he was absolutely immune for his comments as a government official under *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434. That case dealt with a federal official and presumably does not apply to state officials, even in a libel situation. Outside of judicial immunity, a state officer's immunity is qualified. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90. In any event defendant seeks to extend judicial immunity to his extrajudicial acts by contending that they were undertaken—as were the acts complained of in *Barr*—to explain and justify official proceedings. Defendant's actions were assertedly undertaken to preserve the integrity and independence of his court. All of the offending communications are claimed to have been either in defense of allegations by plaintiff's supporters that the John Doe proceedings were improperly handled or related to Judge Harvey's attempt properly to administer his court by stopping the fixing of traffic tickets. The only authority cited for this defense is *Skol-*

*nick v. Campbell,* 398 F.2d 23 (7th Cir. 1968). However *Skolnick* was not a Section 1983 case, and we held that the plaintiff had failed to state a cause of action under Illinois libel law. We also commented that on the theory that Judge Campbell's answer to public criticism was merely "an appropriate response for the protection of the reputation of the court, [he] *may* in any event have enjoyed absolute immunity from civil liability under *Barr v. Matteo.*" (398 F.2d 23, 25–26, emphasis supplied.) Clearly the *Skolnick* case is not precedent for extending judicial immunity to non-judicial acts. Even if it were, it would not protect this defendant because the public and private campaign of vilification alleged in the complaint and credited by the jury went well beyond an appropriate response to protect the integrity and reputation of the court. Moreover, the *Barr* rule has only applied to acts of high executive officers and with respect to actions in their line of duty. 360 U.S. at 573, 575, 79 S.Ct. 1335. Since we agree with the district court that Judge Harvey's attacks on plaintiff were not part of his duties, *Barr* would not afford him a defense even if it did apply to judges. It is undisputed that defendant did not offer a qualified immunity defense below, but in any event such a defense would not withstand the jury's malice finding. *Rosenblatt v. Baer,* 383 U.S. 75, 84, 86 S.Ct. 669, 15 L.Ed.2d 597.

### John Doe Proceeding Evidence Was Admissible.

■ Next defendant contends that the trial judge erroneously received in evidence Judge Harvey's actions in the John Doe proceeding. However, Judge Gordon carefully instructed the jury that it could consider such evidence only insofar as it bore on defendant's state of mind or motive in his efforts to have the plaintiff removed from his job and to ruin his reputation because of racial prejudice (Tr. 1313–1314). The doctrine of judicial immunity does not require the exclusion of judicial acts from evidence but merely protects a judge from liability for those acts. Under Rule 404(b) of the Federal Rules of Evidence, the defendant's judicial acts were clearly admissible as proof of his racially discriminatory motive.

### Defendant Was Acting Under Color of Law.

■ The district court instructed the jury that he had found as a matter of law that the defendant had acted under color of law (Tr. 1323). Defendant contends in his reply brief that if he acted as a private citizen the state action necessary for a Section 1983 claim is lacking, whereas if he acted in his judicial capacity he is immune from civil liability (Reply Br. 7). We have already discussed our agreement with the district court that immunity does not apply because Judge Harvey was not performing judicial functions. We also agree that nonetheless Judge Harvey was acting under color of law by using the power and prestige of his state office to damage the plaintiff.[8] As the district court said,

"I was convinced at trial and remain convinced as a matter of law that the defendant acted under the pretense of his standing as a county judge. No reasonable juror, in my opinion, could find otherwise. Letters were written on official stationery. Press releases were disseminated by the defendant, identified as a county judge, through the media. The defendant brought to bear his influence as a county judge on those to whom he wrote and spoke. When the defendant Judge Harvey urged the discharge of Lieutenant Harris with racial overtones in out-of-court conversations with Captain Pavkovich [*sic*] and Assistant Chief Hagopian, he was acting as a functionary of the state * * *." (App. 30.)

---

8. Defendant's counsel conceded at oral argument that a judge could act under color of law and yet in the absence of all jurisdiction. Counsel for the Voluntary Association of the

Trial Judges of Wisconsin, appearing as *amicus curiae,* conceded that Judge Harvey was acting under color of law.

*This Claim Is Cognizable under the Equal Protection Clause of the Fourteenth Amendment.*

■ Defendant claims that this suit is for defamation and therefore is not cognizable under 42 U.S.C. § 1983, citing *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155. However, *Paul* was basically a libel suit because a police department flyer had mistakenly included Davis' name and photograph in a list of shoplifters. That case presented no equal protection issue. The Supreme Court held that because Davis' claim did not amount to a deprivation of liberty or property it was not cognizable under the due process clause of the Fourteenth Amendment and therefore did not state a cause of action under Section 1983. In contrast, the present case concerns a racially motivated campaign to discredit and damage the plaintiff, resulting in serious injury to him. We agree with the district court that such an intentional tort inspired by racial animus and perpetrated under color of state law constitutes a denial of equal protection. Defendant has produced no case holding that such an action is not cognizable under Section 1983. Here the defendant was acting under color of law, and the jury found that his racially motivated actions had injured plaintiff. Such a claim is clearly within the purview of Section 1983. *Inada v. Sullivan*, 523 F.2d 485, 489 (7th Cir. 1975); *Chase v. McMasters*, 573 F.2d 1011, 1019 n.8, 1019–1020 (8th Cir. 1978); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977); *Floyd v. Trice*, 490 F.2d 1154 (8th Cir. 1974); *Hawkins v. Town of Shaw, Miss.*, 461 F.2d 1171 (5th Cir. 1972); *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972); *Jordan v. Hutcheson*, 323 F.2d 597, 601 (4th Cir. 1963); *Rafferty v. Prince George's County*, 423 F.Supp. 1045, 1050, 1052 (D.Md.1976).

*The Trial Court Did Not Err by Not Instructing the Jury That Truth and Lack of Actual Malice Are Defenses.*

■ The defendant asserts on appeal that his public statements criticizing plain-

tiff's performance as a police officer were fair comment and protected by the First Amendment. Therefore, defendant claims that under *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, he was entitled to an instruction that if the jury found that the charges he leveled at the plaintiff were true or that defendant lacked actual malice (in the sense of intentionally falsifying or recklessly disregarding the truth), he should not be held liable. However, as the district court pointed out, plaintiff's claim was not for defamation but for an intentional deprivation of equal protection of the laws (App. 26–27).[9] The fact that this deprivation was accomplished in part through speech does not allow the defendant automatically to invoke the protection of the First Amendment. The jury's findings that defendant's actions were not only racially motivated but were of an action-intended-to-injure quality establish that they were neither fair comment nor the type of speech that is protected by the First Amendment.

■ Moreover, it is undisputed that defendant did not attempt to establish truth or lack of actual malice as a defense, requested no instruction on those defenses, and raised the First Amendment issue for the first time in his motion for judgment notwithstanding the verdict. In these circumstances the absence of the instruction would not be error even if it would otherwise have been appropriate.

*Form of Verdict Was Not So Duplicitous As to Require Reversal.*

■ Question No. 1 of the special verdict submitted to the jury asked whether defendant's actions concerning plaintiff were racially motivated, and the jury responded affirmatively. Defendant objected at trial and still objects to the form of Question No. 2 which provided as follows:

**9.** We realize that the types of injuries claimed in this case may often result from ordinary defamation. However, the ongoing campaign to have plaintiff relieved of his job, which was

motivated by racial animus and carried out under color of law, distinguishes this case from ordinary defamation cases.

"*Question No. 2*: If you answered question no. 1 'Yes,' then answer this question: Was the plaintiff, Sylvester Harris, injured in any of the following respects by any racially motivated acts by the defendant, Richard Harvey, Jr.:

  (a) the plaintiff's reputation in the community;

  (b) the plaintiff's reputation and working ability within the police department;

  (c) the plaintiff's opportunities for advancement within the police department;

  (d) humiliation, embarrassment and mental distress;

  (e) continued employment.

ANSWER:    Yes   

(Yes or No)"

Defendant asserts that Question No. 2 is duplicitous because the jury was requested to answer whether plaintiff was injured "in any of the following respects." He argues that it could have been understood to permit some jurors to find one type of injury and reject others while other jurors might find a different type of injury and reject the first. We find nothing in the form of verdict or in the instructions suggesting that reading. Instead, the trial judge specifically instructed the jury to reach a unanimous verdict, telling them "in order to return a verdict it is necessary that each juror agree thereto. Your verdict must be unanimous. All six of you who will be jurors in this case must agree." While Question No. 2 could have been framed more artfully, it does not require us to set aside the judgment on the ground that it was fatally duplicitous.

*The Trial Court's Evidentiary Rulings Also Do Not Require Reversal.*

■■■ Defendant first objects to the exclusion of various newspaper articles he attempted to introduce into evidence. The defense theory was that these articles would show that the defendant had been criticized for his handling of the Harris case and would therefore help to establish that his motive in speaking out against Harris was to protect the reputation of his court rather than to injure Harris out of racial animus. Many of the excluded articles do reveal public criticism leveled at defendant, but they also repeat at length the criminal charges then pending against plaintiff. Judge Gordon refused to receive them because their "damage aspects outweighed their possible injury to proprieties notwithstanding their hearsay aspects * * * [and because they are] almost entirely of a hearsay nature and without any saving grace sufficient to outweigh the lack of probative value to them" (Tr. 1098). This ruling was entirely in accord with Rule 403 of the Federal Rules of Evidence which permits a trial judge to exclude evidence whose probative value is merely cumulative or is substantially outweighed by the danger of unfair prejudice, confusion of the issues and the like. Defendant has not shown that Judge Gordon abused his discretion under that rule, especially because Judge Harvey was allowed to testify about the newspaper articles. In his brief, defense counsel claims that Judge Harvey was particularly prejudiced because plaintiff's counsel in rebuttal referred to an excluded newspaper article. The truth of the matter is that counsel for plaintiff was only rebutting defense counsel's erroneous closing statement to the jury that the January 30, 1974, edition of the Racine *Journal-Times* was in evidence.

■■■ The trial court is also criticized for having aborted defense counsel's attempt to question Captain Albro of the Racine Police Department concerning plaintiff's training, experience, and promotion. However, plaintiff's employment record, advancement and allegedly favorable treatment in the Police Department were discussed in the testimony of Captain Povkovich and Police Chief Hagopian and in the findings of the Equal Rights Division's hearing agent.[10]

---

10. The Equal Rights Division is part of Wisconsin's Department of Industry, Labor and Human Relations.

Since the supposed favoritism received by Harris was already covered, it was unnecessary for Judge Gordon to receive further evidence on this subject. As the court stated, the subject of favorable treatment Harris may have received in his employment was "in evidence previously * * * [and] it's duplicative" (Tr. 404). Accordingly, Rule 403 of the Federal Rules of Evidence supported the exclusion of the additional Albro evidence.

■■■■■ Defendant insists that the district court should have permitted him to depose Harris as to his November 7, 1977, resignation from the Police Department which was announced to the press on November 8. The district court had ordered discovery cut off as of November 17, 1977. At a status conference on that date defendant's trial counsel incorrectly told Judge Gordon that he was "sure" that he had previously taken the deposition of plaintiff. Reacting predictably to counsel's erroneous statement that he had already deposed the plaintiff, Judge Gordon refused to permit a "second kick at the cat", adding:

> "The allegations in the complaint, which I hold before me, demonstrate a massive expression of damage that he sustained: Humiliation, distress, embarrassment, loss of credit, loss of good name, hatred of his fellow officers, threatened his life, expenditure of money, deprivation of opportunities for advancement. It seems to me that the adding of the word 'resignation' to that list would not so significantly change the claim this Plaintiff has made to justify a second examination." (Nov. 17, 1977, Tr. 8.)

On appeal, defendant has not shown that it was necessary to depose plaintiff on this subject prior to trial, particularly since the complaint and affidavits had already informed defendant that Judge Harvey's conduct had made plaintiff's job intolerable. 436 F.Supp. at 149. Even defendant's counsel denigrated the necessity for taking such a deposition by telling Judge Gordon it was no "big deal" (Nov. 17, 1977, Tr. 7). Final-

ly, defendant asserts that the trial judge should have permitted the jury to consider an administrative complaint filed by Harris with the Equal Rights Division of the Wisconsin Department of Industry, Labor and Human Relations against the Racine Chief of Police and the Racine Police Department alleging employment discrimination. Defendant asserts that the dismissal of this complaint should have been considered by the jury because it reflected adversely on plaintiff's credibility. The decision (App. 59–70) and complaint were received in evidence as defendant's Exhibits 73 and 74 even though the trial judge did not consider them relevant with respect to defendant's improper conduct. However he did permit the jury to consider them as to any effect they might have upon plaintiff's damages. We agree that neither the complaint before the Wisconsin Equal Rights Division nor the decision thereon related to the merits of plaintiff's complaint against Judge Harvey. Indeed, Judge Gordon was perhaps over-liberal in receiving the exhibits even with respect to damages and in sending them to the jury room. Since defendant has not shown why these exhibits would destroy plaintiff's credibility, Rule 401 of the Federal Rules of Evidence relied upon by the defendant is inapplicable.[11]

### Punitive Damages.

■■■■ In his principal and reply briefs defendant does not attack the amount of the $60,000 compensatory damages assessed by the jury nor even the $200,000 punitive damages so assessed. While this Court might consider the punitive damages awarded to be unduly high, the district court explained in its post-trial opinion that the defendant had not shown that his financial circumstances required a lesser amount of punitive damages and that the court did not find the punitive damages award to be excessive or shocking to the judicial conscience since there had been "a serious abuse of judicial power" by defendant (App. 35–36). In view of the jury's finding that

---

11. Rule 401 defines relevancy. It should be noted that defendant does not rely upon Rule 608 with respect to attacking a witness' credibility so that we need not consider that rule.

defendant had acted "maliciously, wantonly or oppressively," [12] we may not disturb its award of punitive damages. However, the trial judge should consider reducing the $200,000 award if defendant can show financial hardship.

Judgment affirmed.

Rehearing and Rehearing En Banc denied; Pell, Tone, Bauer and Cudahy, JJ., dissenting.

---

**12.** This finding was in response to defendant's proposed instruction No. 8 (R. 27) taken from 2 Devitt and Blackmar, Federal Jury Practice and Instructions (2d ed. 1970) § 87.15 (formerly § 85.11) (Tr. 1144). The definition of malice given by the court (Tr. 1328) was also suggested by defendant (R. 27 at p. 17).