Sylvester HARRIS, Plaintiff,

v.

COUNTY OF RACINE and Employers
Mutual Liability Insurance Company
of Wisconsin, Defendants.

Civ. A. No. 80–C–635.

United States District Court,
E. D. Wisconsin.

May 4, 1981.

Paul J. Gossens, Milwaukee, Wis., for plaintiff.

William F. Bock, Corp. Counsel, Racine, Wis., for County of Racine, defendant.

Stanley F. Schellinger, Milwaukee, Wis., for Employers Mut. Liability Ins. Co. of Wis., defendant.

REYNOLDS, Chief Judge.

This is an action in diversity brought pursuant to 28 U.S.C. § 1332. It arises out of a judgment entered on March 14, 1978, in a 42 U.S.C. § 1983 civil rights action in favor of the plaintiff Sylvester Harris against Richard G. Harvey, Jr., then a county judge in Racine County, Wisconsin. The judgment was in the amount of $60,000 in compensatory damages, $200,000 in punitive damages, and $8,141.36 in costs. According to the complaint the sum of $10,651.51 has been paid toward the judgment, and interest is accumulating at the rate of 7 per cent or $51.42 per day.

In this action Sylvester Harris seeks to recover the amount owing on the judgment from the defendant County of Racine ("Racine"), Judge Harvey's employer at the relevant times, and from Racine's insurer, the defendant Employers Mutual Liability Insurance Company of Wisconsin ("Employers"). Paragraph 6 of the complaint alleges that Racine, as Judge Harvey's employer, provided liability coverage to him in the amount of $10,000, and that Employers, as Racine's insurer, provided liability coverage to Judge Harvey up to the amount of $500,000. The complaint seeks recovery for the total amount owing on the judgment against Judge Harvey from Racine and Employers, jointly and severally.

Presently pending before the court are motions for summary judgment brought on behalf of each party. For the following reasons the plaintiff's motion will be granted in part and denied in part, Racine's motion will be granted, and Employer's motion will be denied.

*Harris v. Harvey*

In 1975 Sylvester Harris, then a black police officer in Racine, Wisconsin, commenced a federal civil rights action against Judge Harvey alleging violation of Harris' rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. The published

decisions in the action are set forth in 419 F.Supp. 30 (E.D.Wis.1976), 436 F.Supp. 143 (E.D.Wis.1977), 453 F.Supp. 886 (E.D.Wis. 1978), and 605 F.2d 330 (7th Cir. 1979), cert. denied, 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980).

Harris alleged that for racially discriminatory reasons Judge Harvey had instituted a criminal John Doe investigation of Harris which resulted in the issuance of criminal charges against him, and during and subsequent to the John Doe proceedings had engaged in a campaign of vilification against Harris by use of the media and of personal contacts with Racine city officials designed to injure Harris personally and professionally and to cause his termination as a Racine police officer. Judge Harvey was granted summary judgment with respect to Harris' due process claims and his claims based upon the judge's conduct of the John Doe proceeding and his participation in a subsequent habeas corpus action, see 436 F.Supp. 143, but summary judgment was denied with respect to the remainder of Harris' equal protection claim. At trial the jury was asked to determine whether Judge Harvey's actions concerning the plaintiff were racially motivated, whether they resulted in injury to the plaintiff, and whether they were taken with malice. The jury answered "yes" to all three questions and awarded Harris $60,000 in compensatory damages and $200,000 in punitive damages.

Subsequent to trial, Judge Harvey moved for judgment notwithstanding the verdict. His motion was denied. In the course of his decision on the motion, which was not published, Judge Gordon stated that the evidence was sufficient to support the jury's verdict "that the defendant intentionally acted with racial motivation to deprive the plaintiff of equal protection of the laws." (Decision and order of June 26, 1978, in *Harris v. Harvey,* C.A.No.75–C–612, at page 2.) Judge Gordon also ruled as a matter of law that subject matter jurisdiction over the action existed because Judge Harvey was acting at all times relevant under color of state law:

"I was convinced at trial and remain convinced as a matter of law that the defendant acted under the pretense of his standing as a county judge. No reasonable juror, in my opinion, could find otherwise. Letters were written on official stationery. Press releases were disseminated by the defendant, identified as a county judge, through the media. The defendant brought to bear his influence as county judge on those to whom he wrote and spoke. When the defendant Judge Harvey urged the discharge of Lieutenant Harris with racial overtones in out-of-court conversations with Captain Pavkovich and Assistant Chief Hagopian, he was acting as a functionary of the state in at least as high a degree as the off-duty policeman in *Davis v. Murphy,* 559 F.2d 1098 (7th Cir. 1977). In my opinion, Judge Harvey's conduct easily fits the general rule stated in *Roberts v. Acres,* 495 F.2d 57, 59 (7th Cir. 1974), that:

" '. . . an individual's conduct is engaged in under color of law if clothed with the authority of the state and purporting to act thereunder, whether or not the conduct complained of was authorized.' " (Decision and order at page 5.)

Finally Judge Gordon ruled as a matter of law that Judge Harvey was not entitled to the defense of judicial immunity from damages for his actions against Harris:

"It is equally clear that the acts taken by the defendant were not judicial acts. In *Stump v. Sparkman,* supra [435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)], the Supreme Court stated:

'The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i. e.,* whether it is a function normally performed by a judge, and to the expectation of the parties, *i. e.,* whether they dealt with the judge in his judicial capacity.' 46 U.S.L.W. at 4256.

Writing letters to the police chief and to other city officials to pressure the discharge of a police officer and issuing

press releases about judicial proceedings are not acts normally performed by judges. These acts, hostile to the plaintiff, were perpetrated by Judge Harvey outside of his courtroom and were not even plausibly a part of his judicial functions. No reasonable interpretation of the evidence could be taken which would permit such conduct to be regarded as within his judicial capacity." (Decision and order at page 6.)

In affirming the judgment and Judge Gordon's decision not to set it aside, the Seventh Circuit agreed that Judge Harvey was acting under color of state law "by using the power and prestige of his state office to damage the plaintiff," 605 F.2d at 337, and that he was not entitled to the defense of judicial immunity because "the acts perpetrated outside of Judge Harvey's courtroom and not then a part of his judicial functions were undertaken in the 'absence of all jurisdiction,'" 605 F.2d at 336, not being functions normally performed by a judge or functions with respect to which the persons dealing with him perceived him to be acting in a judicial capacity. The Seventh Circuit in addition ruled that even were a judge entitled to official immunity for actions taken by him in the course of performing his nonjudicial duties, Judge Harvey would not have been entitled to that defense:

"* * * Defendant's actions were assertedly undertaken to preserve the integrity and independence of his court. * * Clearly the *Skolnick [v. Campbell*, 398 F.2d 23 (7th Cir. 1968)] case is not precedent for extending judicial immunity to non-judicial acts. Even if it were, it would not protect this defendant because the public and private campaign of vilification alleged in the complaint and credited by the jury went well beyond an appropriate response to protect the integrity and reputation of the court. * * * Since we agree with the district court that Judge Harvey's attacks on plaintiff were not part of his duties, *Barr [v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), establishing a defense of official immunity] would not afford him a defense even if it did apply to judges. * * * " 605 F.2d at 336–337.

With regard to the participation of the defendants in this action in Judge Harvey's defense in *Harris v. Harvey*, C.A. No. 75–C–612, Employers undertook the defense of Judge Harvey at trial and supplied him with counsel through the entry of judgment. At the time it undertook his defense, however, Employers also notified him and Racine County that if at any time Judge Harvey was found to have been acting outside the scope of his employment, it would then decline to provide further defense or to assume responsibility for any judgment entered against him. After the entry of judgment, Employers did refuse to provide Judge Harvey with counsel for post-judgment motions or for appeal and took the position, which it continues to maintain, that it is not obligated under its insurance policy with Racine County to cover the judgment entered against Judge Harvey.

Once Employers withdrew from his defense, Judge Harvey hired private counsel and applied to Racine County to underwrite the costs of his continued defense. The county board passed a resolution authorizing payment of Judge Harvey's attorney's fees. A citizens' group filed a civil action in Racine County Circuit Court seeking a writ of prohibition against the resolution. Their suit was denied at the trial court level, but that decision was reversed on appeal in an unpublished decision issued on November 20, 1979, by the Court of Appeals, District II, holding that § 895.46(1), Wis.Stats., precluded the county from paying for Judge Harvey's attorney's fees on appeal. Racine applied for a writ of certiorari to the Wisconsin Supreme Court and the writ was granted, but on the date that the case was scheduled for argument in October 1980, Racine applied to the court for and was granted permission to withdraw its writ.

*The Liability of Racine*

Section 895.46, Wis.Stats., provides in part:

"(1)(a) If the defendant in any action or special proceeding is a public officer or

employe and is proceeded against in an official capacity or is proceeded against as an individual *because of acts committed while carrying out duties as an officer or employe* and the jury or the court finds that the defendant *was acting within the scope of employment*, the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to the officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe. * * * Regardless of the results of the litigation the governmental unit, if it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe *did not act within the scope of employment.* * * *" (Emphasis added.)

Racine takes the position that because Judge Harvey was found to be acting outside of the scope of his judicial functions and of his other nonjudicial duties for purposes of 42 U.S.C. § 1983, he was also acting outside the scope of his employment for purposes of § 895.46, Wis.Stats. Harris takes the position that because Judge Harvey was found to be acting under color of state law for purposes of 42 U.S.C. § 1983, he was also acting within the scope of his employment for purposes of § 895.46, Wis. Stats.

The Wisconsin Supreme Court has not yet decided whether an official who is acting not merely in excess of his authority but rather in the " 'clear absence of all jurisdiction,' " 13 Wall., at 351, as quoted in *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978), may nevertheless be considered to be carrying out his official duties and acting within the scope of his employment for purposes of § 895.46, Wis.Stats. See *Scarpaci v. Milwaukee County*, 96 Wis.2d 663, 694, 698, 292 N.W.2d 816 (1980). In discussing § 895.46 (formerly § 270.58), however, the Court has indicated that the purpose of the statute is to protect public officials from "judgments arising out of their official duties." *Horace*

*Mann Insurance Company v. Wauwatosa Board of Education*, 88 Wis.2d 385, 389, 276 N.W.2d 761 (1979). See also *Bablitch & Bablitch v. Lincoln County*, 82 Wis.2d 574, 579, 263 N.W.2d 218 (1978). As stated in *Thuermer v. Village of Mishicot*, 86 Wis.2d 374, 378–379, 272 N.W.2d 409 (1978):

"The public policy behind sec. 895.46(1), Stats., is if an official incurs expenses in an attempt to prevent the municipality from being held liable, he is attempting to help not merely himself but the municipality. Thus, the municipality should pay the expenses. If the individual had to pay the expenses, it would be less expensive for the individual to allow a default judgment and make the municipality pay for the judgment. * * * In addition sec. 895.46(1), Stats., was intended to give an employee acting in his official capacity some financial protection in the event he was sued for acts which he performed for the governmental unit by which he was employed. The legislature felt that an official acting for the government should be able to do so without fear that he would be personally liable if sued as a result of his acts, provided he was acting within the scope of his employment."

The Seventh Circuit has ruled that in performing the actions upon which his liability to Harris is predicated, Judge Harvey was not carrying out any of the duties, whether judicial or nonjudicial, imposed on him by virtue of his official position. 605 F.2d at 387. The Wisconsin Court of Appeals, District II, in ruling that § 895.46(1), Wis.Stats., did not permit Racine to pay the judge's legal fees for his appeal, equated the district court's findings with regard to Judge Harvey's acting outside of his jurisdiction with a finding that he did not act within the scope of his employment for purposes of § 895.46(1), Wis.Stats. *State of Wisconsin ex rel. Thomas v. Racine County Board*, 93 Wis. 698, 287 N.W.2d 855 (Ct.App. 1979). By way of contrast, an individual is said to be acting "under color of state law" when he is "clothed with the authority of the state and purporting to act thereunder,"

even if his conduct is not authorized or is proscribed by the state. *Roberts v. Acres*, 495 F.2d 57, 59 (7th Cir. 1974); *Davis v. Murphy*, 559 F.2d 1098 (7th Cir. 1977); *Screws v. United States*, 325 U.S. 91, 107–112, 65 S.Ct. 1031, 1038–1040, 89 L.Ed. 1495 (1945) (all involving use of excessive force by a police officer during an allegedly unlawful arrest).

The judicially created doctrine of sovereign immunity has been abrogated in Wisconsin. *Holytz v. City of Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618 (1962). Nevertheless, by virtue of § 27, Article IV, of the Wisconsin Constitution, the state may be sued only with its consent and upon such terms as the legislature chooses to impose, for example, with respect to ceilings on the amount of damages or administrative prerequisites. *Holytz v. City of Milwaukee*, supra, at 40–41, 115 N.W.2d 618; *Forseth v. Sweet*, 38 Wis.2d 676, 688–689, 158 N.W.2d 370 (1968); *Cords v. State*, 62 Wis.2d 42, 48–50, 214 N.W.2d 405 (1974). So long as its classifications have a rational basis, the legislature may also, without running afoul of equal protection or due process, establish classes of claimants who may recover while denying recovery to other classes, since "immunity from suit is a privilege which a sovereign may waive or refuse to waive at its pleasure." *Apfelbacher v. State*, 160 Wis. 565, 577, 152 N.W. 144 (1915); *Forseth v. Sweet*, supra, 38 Wis.2d at 689, 158 N.W.2d 370; *Cords v. State*, supra, 62 Wis.2d at 51–53, 214 N.W.2d 405; *Stanhope v. Brown County*, 90 Wis.2d 823, 844, 280 N.W.2d 711 (1979).

Plaintiff argues that *Owen v. City of Independence, Missouri*, 445 U.S. 622, 650–652, 100 S.Ct. 1398, 1415–1416, 63 L.Ed.2d 673 (1980), imposes an absolute liability on governmental subdivisions in civil rights actions for wrongs committed by their employees, and also that the case establishes a policy favoring recovery in civil rights actions by plaintiffs whose injuries are inflicted by persons whose power to inflict such injuries derives solely from their being clothed with the authority of the state by virtue of their official positions. That argument overlooks the fact that the County

of Racine was not a co-defendant with Judge Harvey in Harris' civil rights action against Harvey and that liability of a governmental subdivision in a civil rights action arises only where the wrongdoer-employee is acting pursuant to an established government policy or custom. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Owen v. City of Independence, Missouri*, supra, 445 U.S. at 633, 100 S.Ct. at 1406. At the time Harris filed suit against Judge Harvey, federal law precluded him from also suing the County of Racine. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Whether or not he would have chosen to join Racine as a defendant had the law permitted it, the relevant facts for purposes of this action are that Racine was not a defendant, that no finding was made that Judge Harvey was acting pursuant to a policy or custom of the County of Racine, and that the pending suit is not a federal civil rights suit against Racine but rather one brought pursuant to state statute and therefore that the result is governed by the language of the statute. No wrongdoing on the part of Racine is alleged nor is it alleged that Racine directed, approved of, or had the power to control Judge Harvey's conduct. Thus, Racine's liability to Harris, if any, arises solely by virtue of § 895.46(1), Wis.Stats., and federal policies in the area of civil rights legislation are not controlling.

Harris also points out that the Racine County Board passed a voluntary resolution after judgment was entered in the district court in *Harris v. Harvey* and after Employers withdrew from the case authorizing reimbursement of Judge Harvey by Racine for his legal fees and costs on appeal. Harris argues that such conduct on the part of Racine establishes its belief even after judgment had been entered that Judge Harvey had been acting within the scope of his employment for purposes of § 895.46(1), Wis.Stats. Racine's construction of the statute is only an opinion, however, and one in no sense binding on this court. Plaintiff is not making and could not successfully

make under the circumstances of this case a formal estoppel argument. Furthermore, judging from the Wisconsin appellate decision issued in the taxpayer suit challenging the Racine resolution, it appears to have been Racine's position that § 895.46 did not require but did permit it to continue to subsidize Judge Harvey's defense until the appeals process was concluded. It may be, as plaintiff asserts, that Racine chose in October 1980 to withdraw its petition for certiorari of the appellate decision in an effort to avoid liability in this action for the full amount of the judgment against Harvey. Such a motivation would not be inconsistent with a desire to provide some support and protection to its employees by enabling them to appeal a trial court decision on liability.

▬ In summary, § 895.46(1), Wis. Stats., is a waiver of sovereign immunity with respect to acts committed by an official or employee while carrying out the duties of his office. Whatever Racine's perception of Judge Harvey's conduct may have been, a final judgment has been entered against Judge Harvey in favor of Harris and affirmed by the Seventh Circuit on the basis that Judge Harvey was not carrying out any of the duties of his office at the relevant times. While there is no definitive Wisconsin court decision interpreting the phrase "acting within the scope of employment" as used in § 895.46(1), the relevant case law does suggest that the phrase is equivalent to acting "while carrying out duties as an officer or employe" and does not encompass all actions taken by an employee while acting "under color of state law." Therefore, § 895.46(1) does not impose liability on Racine for Harris' judgment against Harvey in C.A. No. 75–C–612.

*The Liability of Employers*

At the times relevant to this action, Racine had in effect a policy of insurance issued by the defendant Employers which provided coverage of $500,000 per occurrence with a retained limit of $10,000. The umbrella liability policy provided coverage on behalf of the insured for "all sums in excess of the retained limit which the insured shall become legally obligated to pay." (Umbrella policy, part 1, at page 1.) Part V of the umbrella policy sets forth the persons insured by the policy, among whom are—

"(C) * * * (1) any * * * employee of the named insured [the county] while acting on behalf of the named insured." (Umbrella policy at page 4.)

In the "Definitions" section of the umbrella policy, "personal injury" is defined to include:

"(E) injury arising out of discrimination because of race, * * * provided insurance with respect thereto is not prohibited by law." (Umbrella policy at page 9.)

At issue in this case is whether or not Judge Harvey was "acting on behalf of" Racine at the relevant times and also whether Employers is obligated to pay the full amount of the judgment against Judge Harvey, including punitive damages.

▬ A contract of insurance, the terms of which are not ambiguous, may not be equitably redrafted to provide coverage to the insured in excess of that provided by the plain language of the contract. *Amidzich v. Charter Oak Fire Insurance Company*, 44 Wis.2d 45, 52, 170 N.W.2d 813 (1969). An ambiguity exists when a word or phrase is reasonably susceptible to more than one construction. *Garriguenc v. Love*, 67 Wis.2d 130, 135, 226 N.W.2d 414 (1975). In such case the language of the policy should be construed against the insurer. *Stanhope v. Brown County*, 90 Wis.2d 823, 849, 280 N.W.2d 711 (1979); *Garriguenc v. Love*, supra, 67 Wis.2d at 135, 226 N.W.2d 414; *Wisconsin Builders, Inc. v. General Insurance Company of America*, 65 Wis.2d 91, 103, 221 N.W.2d 832 (1974). The test of the meaning of a word or phrase is not what the drafter or insurer intended it to mean, but rather what a reasonable person in the position of the insured would have understood it to mean. *McPhee v. American Motorists Insurance Company*, 57 Wis.2d 669, 676, 205 N.W.2d 152 (1973).

For the same reasons as the County of Racine, Employers contends that because Judge Harvey was found to have been acting outside of his jurisdiction and his actions were found to have been no part of the duties of his office, he was not "acting on behalf of" Racine while engaging in the conduct for which liability was imposed. The phrase "acting on behalf of" is susceptible to various interpretations, however, and is not necessarily co-extensive either with "carrying out duties as an officer or employe" or with "acting within the scope of employment."

During the oral argument held on these motions on February 20, 1981, all parties agreed that the motions are appropriate for summary disposition and that the issue of coverage is one for the court to determine. (Tr. at 31–32) See also *Garriguenc v. Love*, supra, at 133. There is on file in this case an affidavit by Judge Harvey stating that he believed at all times that he was carrying out the duties of his office and acting in the best interests of the County of Racine. (Affidavit filed Sept. 30, 1980 in support of plaintiff's motion for summary judgment.) As a matter of law, Judge Harvey was not carrying out the duties of his office and cannot by filing an affidavit stating the contrary create an issue of fact in that regard. Nor is it any longer open to question that he acted with malice and in a manner that was racially discriminatory. At the same time, no one contends that he acted as he did for purposes of personal aggrandizement or gain. (See transcript of Feb. 20, 1981, oral argument on page 36.)

■ "On behalf of" means "in the interest of: as the representative of: for the benefit of." Webster's Third New International Dictionary (1966). It was determined by the district court and the court of appeals that Judge Harvey acted under color of state law, meaning that he acted "as the representative of" the county, even if not in the *best* interest of the county. The language of the insurance contract, construing it in favor of the insured, is broad enough to cover an employee who acts in his official capacity even if in a manner not specifically authorized by or even prohibited by his employer.

■ Furthermore, the umbrella policy issued by Employers specifically provided coverage for injury arising out of racial discrimination. It is appropriate to look to the contract as a whole for guidance in construing one of its provisions. *Kraemer Bros., Inc. v. United States Fire Insurance Company*, 89 Wis.2d 555, 562, 278 N.W.2d 857 (1979); *Stanhope v. Brown County*, supra; *D'Angelo v. Employers Mutual Liability Insurance Company*, 59 Wis.2d 46, 50, 207 N.W.2d 846 (1973). Since racial discrimination will seldom, if ever, be authorized by the employer and the insurance policy does not limit coverage to unintentional acts of discrimination, it is not an unreasonable construction of the policy to hold that it insures against intentional acts of discrimination by an employee acting under color of state law rather than in a purely private capacity.

■ The policy also specifically provides coverage for all sums in excess of the $10,000 retained limit which the insured shall become legally obligated to pay. Judge Harvey is legally obligated to pay the full amount of the judgment which Harris obtained, including $200,000 in punitive damages. Thus, by its terms the policy provides coverage for the punitive damages award. *Cieslewicz v. Mutual Service Casualty Insurance Company*, 84 Wis.2d 91, 267 N.W.2d 595 (1978).

■ Employers argues that despite the language of the contract, public policy in Wisconsin forbids the enforcement of a contract which insures against liability for punitive damages. The Wisconsin Supreme Court has not resolved the issue, see *Wangen v. Ford Motor Company*, 97 Wis.2d 260, 287 n. 13, 294 N.W.2d 437 (1980), and it has been the subject of numerous commentaries, for example, 62 Marquette Law Review 1, "Insurability of Punitive Damages" (1978); 20 A.L.R.3d 343, "Liability Insurance Coverage as Extending to Liability for Punitive or Exemplary Damages." Courts around the country are evenly divided on

the issue. Compare, e. g., *Northwestern National Casualty Company v. McNulty*, 307 F.2d 432 (5th Cir. 1962), and *Hartford Accident and Indemnity Co. v. Village of Hempstead*, 48 N.Y.2d 218, 422 N.Y.S.2d 47, 397 N.E.2d 737 (N.Y.Ct.App., 1979), prohibiting coverage, with *Harrell v. Travelers Indemnity Co.*, 279 Or. 199, 567 P.2d 1013 (1977), and *Price v. Hartford Accident & Indemnity Co.*, 108 Ariz. 485, 502 P.2d 522 (1972). See also the cases cited in footnote 1 of the article at 62 Marquette Law Review 1, supra.

Those cases which deny coverage stress the function of punitive damages, stated as being to punish the wrongdoer and to deter others from engaging in similar conduct. If such damages were insurable, the argument goes, the purpose for allowing them would be entirely undermined if a defendant could shift liability to an innocent third party, i. e., the insurer and ultimately the public in the form of higher premiums. Courts have noted that evidence of a defendant's wealth is generally admissible as the basis for assessing the amount of punitive damages, and thus, in theory at least, they are individually tailored to the defendant's ability to pay, and also that public policy forbids insurance against criminal fines which are also punitive and not compensatory in nature.

Courts which permit recovery of punitive damages stress the private nature of a contract of insurance and hold that public policy favors compelling an insurer to perform those obligations for which it has contracted and received payment in the form of a premium, and which the insured reasonably expects to be performed, and which the insurer could have eliminated from the contract by the use of appropriate language. They also note that frequently there are alternative sanctions imposed on the offender in addition to the punitive damages, and some courts also question whether punitive damages in fact do have a deterrent effect.

In *Cieslewicz v. Mutual Service Casualty Insurance Company*, 84 Wis.2d 91, 267 N.W.2d 595 (1978), the Court upheld as not against public policy insurance coverage of a statutory treble damage award. It noted that statutory and common law punitive damages are distinct in certain respects in that the former do not require a particular state of mind on the part of the offender, are automatically imposed if the statutory preconditions are met rather than being awarded as a matter of discretion on the part of the trier of fact, and are fixed in amount and not keyed to the wealth of the offender. The Court went on to state:

"The distinctions between common law punitive and statutory multiple damages convince us that the two forms of additional damages must be treated separately, each on its own merits, and for that reason, we decide in this case only that insurance against statutory multiple damages is not contrary to public policy. On the other hand, it would be an exercise in semantics to attempt to define away the problem posed by the [Northwestern National Casualty Co. v.] McNulty [307 F.2d 432 (5th Cir. 1962)] case by referring to multiple damages as 'augmented compensatory' damages, or some such euphemism. Clearly, multiple damages do retain elements of punishment and deterrence, even though multiple damages are not for all purposes equivalent to common law punitive damages. To this extent, we recognize that allowing insurance against these damages may have the effect of softening the blow of both the punitive and deterrent aspects of these damages. We are urged to hold, on this basis, that insurance against multiple damages is contrary to public policy. We decline to do so.

" 'Public policy' is no magic touchstone. This state has more than one public policy. Another and countervailing public policy favors freedom of contract, in the absence of overriding reasons for depriving the parties of that freedom. Still another public policy favors the enforcement of insurance contracts according to their terms, where the insurance company accepts the premium and reasonably represents or implies that coverage is provided. Cf., *Price v. Hartford Accident &*

*Indemnity Co.,* 502 P.2d at 524." 84 Wis.2d at 103, 267 N.W.2d 595.

In common with punitive damages, the Court noted that insurance coverage of statutory damages does not destroy the elements of deterrence and punishment since additional sanctions may be imposed, and that it is not necessarily the public at large which will suffer from increased premiums if insurance coverage is allowed, but rather "the burden [may be spread] out among similarly situated persons, while avoiding the devastating financial impact on particular individuals. The latter consideration is the very essence of the public policy which encourages and accepts insurance." 84 Wis.2d at 104, 267 N.W.2d 595.

Employers in its policy of insurance with Racine County specifically agreed to cover injury arising out of racial discrimination on the part of county employees. That type of discrimination is frequently intentional and frequently results in the imposition of punitive damages. Employers does not contest that Judge Harvey is a county employee for purposes of the insurance contract. Thus, considering what Employers contracted for and the ease with which it could have restricted the coverage provided, there are no equitable considerations which favor its release from liability.

The blow to Judge Harvey of the punitive damages award will be softened significantly if it is held to be insurable. He does not escape without punishment, however, for he has also suffered a significant loss of reputation, and he is personally liable for the $10,000 retained limit in the policy.

Contrary to the *Cieslewicz* case, in this case it is the public and not a class of tortfeasors similarly situated to Judge Harvey who will suffer the burden of higher insurance premiums if insurance coverage is allowed, since Judge Harvey is a governmental employee and his employer's insurance is paid for with public tax money. The burden imposed on the public by way of higher insurance premiums may, however, be counterbalanced by the greater freedom of action which the public's employees will have if they are not inhibited from acting by the fear of resultant personal liability. The threat of a noninsured punitive damages award may be a deterrent to individual misconduct, but it may also interfere with the legitimate exercise of discretion by governmental officials.

The rationale for the public policy prohibiting insurance against common law punitive damages is that such damages have a beneficial effect on individual conduct since they serve to punish the tortfeasor and to deter others from committing intentional torts. That assumption as to their effect is not valid in the case of § 1983 actions against public officials.

While the statutory protection of individual civil rights has had the beneficial effects of legislatively reinforcing the importance of individual rights and creating remedies unknown at common law for violations of those rights, it has also had unforeseen consequences which must be taken into account in any discussion of public policy in connection with civil rights actions. One of the most significant and troublesome of those consequences is the chilling effect which the threat of such actions may have on public officials who, through fear of the consequences, may choose not to act rather than to act in a manner potentially controversial.

It has been my observation that many of the public officials who are sued under the civil rights laws are persons who have performed their "duty" as they have seen it, but long after doing so and much to their surprise have subsequently been found by a court or a jury to have committed a violation of civil rights for which they are liable in punitive damages. Very few, if any, of those cases involve officials who have committed actions for their personal monetary gain. As a case in point, Judge Harvey, although he was in error, claims to have been acting in the best interests of the County of Racine, and he may well have believed that he was doing so. It is a prerequisite to civil rights liability that the person liable be found to have been acting "under color of state law." The foundation for the doctrine of immunity is the belief

that judges and other public officials must be free to act without fear of the consequences of their actions if they are to perform their duties in the manner which best serves the public. As with all people, however, their judgment may err, and even err substantially, and cause them to act in a manner outside the scope of their duties and contrary to the best interests of the public. As in Judge Harvey's case, they may as a consequence lose the protection of their official immunity. The public interest is not served if they are in addition prohibited from insuring themselves against the possibility of personal liability. Fear of the consequences of acting can prohibit more than impermissible conduct. It can also have a substantially inhibiting effect on the exercise of reasonable discretion. Avoidance of that effect, which is in turn caused by fear of "the devastating impact on particular individuals" of a punitive damages award, is, as the Wisconsin Supreme Court stated in *Cieslewicz*, 84 Wis.2d at page 104, 267 N.W.2d 595, "the very essence of the public policy which encourages and accepts insurance." A judge-made rule that public policy prohibits a municipality from insuring its employees against such catastrophic risks as they are now exposed to would be ludicrous in that it could destroy the effectiveness of the municipalities.

A secondary characteristic of civil rights actions which distinguishes them from common law torts is that often the injuries for which they are brought are intangible. I am aware that historically in Wisconsin punitive damages have not been considered to have any compensatory function. *Kink v. Combs*, 28 Wis.2d 65, 81, 135 N.W.2d 789 (1965). It is my opinion, however, that particularly in discrimination cases where the provable financial injuries to the victim may be inconsequential, juries do take into account the intangible injuries which the victim has suffered in awarding punitive damages, and in result that even if the defendant's wealth is taken into account when the damages are imposed, they can still have a "devastating financial effect on particular individuals." *Cieslewicz, supra,* 84 Wis.2d at 104, 267 N.W.2d 595. The

authors of the Marquette article cited above argue that the failure of punitive damages to fulfill their historical purpose provides a rationale for their elimination and not for their insurability. So long as punitive damages awards are permitted, however, a court in analyzing the public policy implications of allowing insurance must take into account the reality of punitive damages awards and not merely the theory behind them.

Fulfillment of "public policy" is in any case a euphemism for the exercise of the type of discretion most often committed to the legislature. The defendant insurer in this case has raised the public policy issue in an effort to escape from its contractual obligations on the ground that enforcement of them would violate public policy by allowing Judge Harvey to pass on to an "innocent" third party, i. e., the insurer, the consequences of his own wrongdoing. While I neither approve of nor condone Judge Harvey's actions, the necessity that he be punished for what he did is the least important of the relevant policy considerations.

A policy consideration at least as significant as the punitive consideration is whether or not an insurer should be able to purport to provide coverage for certain types of injuries and then to escape liability when a claim is made for reimbursement. Absent a legislative determination that certain types of contract provisions either are or are not legal, a court should be reluctant to interfere with contracts freely entered into by parties who both have adequate bargaining power.

Municipalities themselves have, as do their officials, a right to contract, and if they wish to protect their interests by entering into a type of contract which has never to date been declared illegal by the Wisconsin legislature, it would amount to an excessive judicial interference with the right to freedom of contract and with the prerogative of the legislature to declare such contracts illegal because they do not accord with what a judge might prefer as the better of competing public policies. Nothing in this decision or in the law com-

pels an insurer to provide coverage to any municipality or individual to cover the types of wrongs committed by Judge Harvey, but once the insurer has done so and has entered into a contract which specifically provides coverage for conduct for which the insured is later held liable, then the contract made by the insurer ought to be enforced.

In conclusion, recognizing that the issue presented in this case demands that various policy considerations be weighed against each other and that selection of the best alternative is necessarily subjective, I am convinced that permitting public officials to insure themselves against all types of liability to which they may be exposed in civil rights actions is good, sound public policy. Civil rights litigation has become almost an occupational hazard of public life. Public officials cannot be expected to perform their duties effectively if they cannot protect themselves against the risks of taking action. To rule otherwise would be to accept the fact that as a matter of public policy we prefer that our public officials do nothing effective, take no risks, and thus avoid litigation.

*The Judgment*

Judgment was entered in *Harris v. Harvey,* C.A. No. 75–C–612, on March 14, 1978, in the amount of $260,000 plus costs and attorney's fees which were subsequently assessed in the amount of $641.36 and $7,500, respectively. Plaintiff was later awarded an additional $916 in costs and $2,000 in fees for the appeal.

According to the affidavit of plaintiff's counsel filed April 17, 1981, with reference to which no countervailing materials have been filed, through garnishment Judge Harvey has personally paid $11,149.19 toward the judgment. That amount is in excess of the retained limit in the policy. There remains due and owing on the judgment through April 20, 1981, the total sum of $316,875.11 plus interest thereafter at the rate of $49.29 per day. (Affidavit, paragraph 7.) Judgment will therefore be entered in favor of the plaintiff against Employers in the sum of $316,875.11 plus interest from April 21, 1981, through the date of satisfaction of the judgment at the rate of $49.29 per day plus costs as allowed by law.

### ORDER

For the foregoing reasons,

IT IS ORDERED that the motion of the plaintiff Sylvester Harris for summary judgment is *granted* with respect to the defendant Employers Mutual Insurance Company of Wisconsin and is *denied* with respect to the defendant County of Racine.

IT IS FURTHER ORDERED that the motion of the defendant Employers Mutual Insurance Company of Wisconsin for summary judgment is denied.

IT IS FURTHER ORDERED that the motion of the defendant County of Racine for summary judgment is granted.

IT IS FURTHER ORDERED that judgment be entered in favor of the defendant County of Racine dismissing the plaintiff's action against it with prejudice and with costs as allowed by law; and that judgment be entered in favor of the plaintiff Sylvester Harris against the defendant Employers Mutual Insurance Company of Wisconsin in the sum of $316,875.11 plus interest at the rate of $49.29 per day from April 21, 1981, through the date of satisfaction of the judgment, plus costs as allowed by law.